Jewel Paint and Varnish Company, Appellee, v. John H. Walters, Appellant.

Gen. No. 10,393.

Opinion filed January 10, 1950. Released for publication February 9, 1950.

CHARLES G. SEIDEL and ERNEST W. AKEMANN, both of Elgin, for appellant.

PUTNAM, JOHNSON, ALSCHULER & RUDDY, of Aurora, for appellee; CLARENCE J. RUDDY and SAM ALSCHULER, both of Aurora, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

In the summer of 1942, the defendant, John H. Walters, then seventeen years of age, was first employed by the plaintiff, Jewel Paint & Varnish Company, and worked in the shipping department in its Chicago factory. His duties consisted of packing and painting cases of paint for shipment. In 1943, he entered the military service of the United States and remained in service until discharged in December 1945. In March 1946, he resumed his work with the plaintiff, and at that time his duties consisted of taking care of the machinery, greasing, and painting it. In July 1946, he was transferred from the Chicago plant to the Elgin retail store of the plaintiff, and his duties there were to unpack the cartons of paint, put the paint on the shelves, wait on the trade, meeting the customers of

the store and looking after the sale of the merchandise of the company. He continued in this work from July until November or December of that year. His hours of employment were from 7:30 in the morning to 5:30 in the afternoon, and his wages were $35 per week. His employer is a small chain of paint stores. Clarence Dagler was the manager of the store at Elgin, and Dominic Francimor was supervisor of the several retail stores of the plaintiff then located at Elgin, Aurora and Joliet. At the time of the hearing, in addition to those three stores, the company also had stores at Ottawa and Danville. In November or December 1946, defendant became manager of the Elgin store, and his duties were to wait on the trade, make up the daily reports, make records of the merchandise sold, unpack the paint, place it on the shelves, and also make up a daily report showing the amount of business done that day including the amount of cash sales and, also, the charge service. In addition to the daily reports, he also made up monthly and yearly reports, and for his services he received a salary of $45 per week which was subsequently increased to $55 per week.

On or about August 15, 1947, the following agreement was executed:

"This Agreement made and entered into this 15th day of August, 1947, between John H. Walters, hereinafter sometimes referred to as the 'Employee' and Jewel Paint & Varnish Co., a corporation, organized and existing under the laws of the State of Illinois, having its principal place of business located at 345 North Western Avenue, Chicago Ill., hereinafter sometimes referred to as the 'Company,'

WITNESSETH

That for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, the receipt whereof is hereby acknowledged,

and the mutual covenants herein contained, It is Agreed as follows:

1. The Company does hereby employ John H. Walters, and said Employee does hereby agree to work for the Company as Manager of its retail paint and wallpaper store in Elgin, Ill., at a salary of Forty-Five Dollars ($45.00) per week. As additional compensation, the Company agrees to pay annually to the Employee after the close of the Company's books at the end of its fiscal year (November 30th) twenty per cent (20%) of the net operating profits earned by the store managed by the said Employee from December 1, 1946 to November 30th, 1947, and during the twelve (12) months preceding each November 30th thereafter.

The amount due the Employee as such additional compensation shall be based upon an audit by the firm of certified public accounts employed by the Company for general audit purposes.

2. In the event the Company transfers the Employee from one of its stores to another in the course of any fiscal year, the Employee shall receive his pro-rata share of the net operating profits of the store or stores managed by himself, according to the number of months the store or stores was or were under his management. For this purpose, any period of less than fifteen (15) days shall be considered one-half month, and any part of a month in excess of fifteen (15) days, shall be considered a full month.

3. Either the Employee or the Company may, at his or its option, terminate this agreement at any time, by two (2) weeks' notice either verbally or in writing. Such notice shall be given to the Company at 345 N. Western Avenue, Chicago, Ill., and to the Employee at his place of employment.

4. It is understood that the Company's fiscal year runs from December 1st to November 30th, and should

the Employee elect to terminate this contract as of any date prior to November 30th of any year, he shall thereby waive any claim for the additional compensation referred to above, and shall be limited with respect to the fiscal year in which he so terminates this agreement to the weekly salary due him under this agreement.

5. In the event the Company elects to terminate this agreement prior to November 30th of any year, the Company shall, in addition to the weekly salary due at the date of termination, pay to the Employee within thirty (30) days after employment ceases, his pro-rata share of the twenty per cent (20%) of the net operating profit earned by the store or stores managed by him during the then current year, up to the date employment ceases, as shown by the Company's accounting records. This pro-rata payment of twenty per cent (20%) of said net earnings shall, together with the weekly salary as heretofore provided, constitute full and complete settlement of all claims and demands.

6. In consideration of the compensation arrangements hereby covenanted, the Employee hereby covenants and agrees to devote his full time, energies, knowledge and abilities to the management, operation and development of the business of the retail store at which he is employed, to the exclusion of all other personal business interests unless otherwise in writing agreed, and the Employee shall conscientiously and diligently perform all required acts and duties and faithfully discharge all responsibilities entrusted to him as store manager.

7. The Employee covenants and agrees that in event of the termination of his employment, either by himself, or by the Company, for any reason whatsoever, he shall not, either directly or indirectly on his own account, or in the service of others, engage

in the sale distribution, or promotion of the sale of paint, wallpaper and decorating materials, or communicate any information about the Company's business to any person, firm or corporation, within two (2) years from the date his employment with the Company ceases, within an area of twenty-five (25) miles surrounding any retail store or stores owned and operated by the Company at the time his employment is terminated.

8. It is understood and agreed between the parties hereto that the amount of weekly salary herein stipulated to be paid may at any time be altered, revised or increased by mutual consent of the parties hereto without detriment or prejudice to the remainder of the covenants herein, all of which shall remain in full force and effect until terminated, as provided by this agreement.

In Witness Whereof, John H. Walters has affixed his hand and seal, and Jewel Paint & Varnish Company has caused these presents to be signed by its President, and attested by its Secretary, and its corporate seal to be hereunto affixed, all at Chicago, Illinois, this 15th day of August, 1947.

John H. Walters (SEAL)

(SEAL of Jewel Jewel Paint & Varnish Co.,
Paint & Varnish Co.) By Robert O. Clark
 President

Attest
 H. J. Wachter
 Secretary.''

In October or November 1946, at the request of the company, the defendant went to the Aurora store and worked in the Aurora store for a week, and during that time he contacted the trade and made sales. During the time he was manager of the Elgin store, the supervisor, Dominic Francimor, talked to the defendant about the methods of operation and about the

promotional plans the company contemplated and told him how the company desired the business conducted. During that time, the store did some advertising in the local newspapers, and the defendant prepared some of those advertisements, did other promotional work and dressed the windows, setting out the paints and varnishes of the company to their best advantage.

On April 2, 1949, the defendant quit his employment with the plaintiff and thereafter went to work for the Valley Paint Company at its retail store in Elgin. The Valley Paint Company sells paints, varnishes and decorating materials at retail in Elgin and is a competitor of the plaintiff company. On May 13, 1949, the instant complaint was filed to enforce, by injunction, the provisions of the foregoing contract. The defendant answered admitting the execution of the contract but insisting that it unreasonably restricted the defendant from seeking employment with some one other than the plaintiff and that it was void and its provisions illegal and unenforcible.

A hearing before the chancellor resulted in a decree finding that the parties executed the contract hereinbefore set forth, and that upon the execution thereof defendant entered upon his duties as manager of plaintiff's store at Elgin and served as such manager until April 2, 1949, at which time he severed his employment with the plaintiff; that on April 25, 1949, in violation of the terms of his contract with the plaintiff, he entered the employ of Valley Paint Company at Elgin, which company is engaged in the same business as the plaintiff in the City of Elgin and within twenty-five (25) miles of the store of the plaintiff and competes with the plaintiff. The decree further found that at the time defendant terminated his employment with the plaintiff, the plaintiff was also operating stores in Aurora, Joliet, and Ottawa. The decree directed that a writ of injunction issue restraining the defendant

from engaging in the sale, distribution, or promotion of the sale of paints, wallpaper or decorating materials, or communicating any information about the plaintiff's business to the Valley Paint Company or to any other persons, firm, or corporation for a period of two (2) years from April 2, 1949, within an area of twenty-five (25) miles of any retail store owned by, or operated by, the plaintiff in the cities of Aurora, Elgin, Joliet, and Ottawa, Illinois, being the stores which were owned and operated by the plaintiff on April 2, 1949. To reverse this decree the defendant prosecutes this appeal.

The defendant, upon the hearing, testified that a lot of the trade at any of the stores was largely by regular customers and that he became acquainted with those customers, knew them by name, and that they knew him by name; that he left the employ of the plaintiff on April 2, 1949, because he was on the verge of a nervous breakdown; that on April 25, 1949, he went into the employ of Valley Paint Company, which is engaged in the retail sale of paints, varnishes and decorating materials in Elgin, and is a competitor of the plaintiff company; that at the time of the hearing, he, the defendant, was working at the Valley Paint store; that while employed by the plaintiff, he had entered into contracts with the Hager Pottery Company and with the Reynolds Metal Company at La-Grange and, through his efforts, he had sold these companies paint and decorating material; that he became acquainted with the customers of the plaintiff, had occasion to sell to various painters who lived in Elgin and in the vicinity of Elgin, and that there was a difference in the price of merchandise offered to painters and the price to which the products of the company were sold to the general public; that the painters received a discount not given the public, and that he knew what the prices were and had access to a

book which gave prices of the various articles of merchandise the company handled, and that he knew the names of the painters to whom credit was to be extended. He further testified that the contracts, which he made with the Metal Company of LaGrange and with the Hager Pottery Company of Dundee, were made during business hours while he was in the employ of the plaintiff, and that the contracts were made at the respective plants of the companies and not at the Elgin store.

Counsel for appellant recognize that contracts in partial restraint of trade are valid and enforcible if reasonable as to time, place and terms and is reasonably necessary to protect the party relying upon its covenants, but it is insisted that the contract which forms the basis of this proceeding is illegal and void as against public policy.

 The general rules of law relative to restrictive covenants in employment contracts are well established and clearly defined in this State, and it is the law that a restrictive covenant in an employment contract must be reasonable as to time, must be reasonable as to area and must be reasonably necessary to protect the employer's business. The time limitation in the instant case is a period of two years after the termination of employment. The area is twenty-five miles surrounding any store of the employer at the time the employment is terminated. The employer's business at the time appellant's employment terminated, was retailing paint, wallpaper and other like commodities in the cities of Elgin, Joliet, Aurora and Ottawa. The decree of which he complains restricts him from engaging in the paint and wallpaper business in these four cities and in an area of twenty-five miles surrounding each of them.

The record shows that appellant's entire business experience was gained in the employment of appellee;

that as manager of the store at Elgin, he contacted and secured customers and that the good will which appellee's business there enjoyed, was due to the efforts of appellant. Had appellant gone into some other business or left the territory served by appellee, this good will which appellee's business enjoyed, would have continued, but when he became an employee of a competing business it is reasonable to conclude that some of these customers and some of their business would be lost to appellee. In *Smithereen Co. v. Renfroe*, 325 Ill. App. 229 at page 240, the court said: "Contracts have frequently been upheld whereby salesmen, agents, canvassers and other employees, who come in personal contact with their employer's customers, agree not to engage in a competitive business in a limited time and area after leaving their employer's service." In *Old Rose Distilling Co. v. Feuer*, 202 Ill. App. 210, an injunction restraining the defendant from breaching his contract of employment as manager of a saloon in Chicago was sustained. In that case it appeared that the defendant agreed that after the termination of his employment he would not engage in the saloon business in certain specified territory for a period of three years.

In *Union Strawboard Co. v. Bonfield*, 193 Ill. 420, cited and relied upon by counsel for appellant, it appeared that the restrictive covenant there considered was operative for twenty-five years and applied to the entire State of Illinois or "anywhere else where so doing may conflict with the business interests or diminish or lessen the profits of said Union Strawboard Company." In *Kling Bros. Engineering Works v. Whiting Corp.*, 320 Ill. App. 630, also cited and relied upon by appellant, the restrictive covenant involved was unlimited as to area. The factual situation is therefore entirely different in those cases than in the instant case.

The contract which forms the basis of this proceeding is not indefinite or unreasonable as to time or area and we think the conclusion of the chancellor that its provisions were reasonably necessary to protect appellee's business is sustained by the evidence. The decree will therefore be affirmed.

*Decree affirmed.*