Aristocrat Window Co., a Corporation, Plaintiff-Appellee, v. Ralph Randell and Aristobilt of Chicago, Inc., a Corporation, Defendants-Appellants.

**Gen. No. 50,017.**

First District, Third Division.

February 25, 1965.

Rehearing denied March 25, 1965.

Mitchell Edelson, Jr., of Chicago, for appellant, Randell, Harry B. Aron, of Chicago, for appellant, Aristobilt.

Alfred M. Walter and Howard T. Savage, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

The plaintiff herein filed a complaint in equity against Ralph Randell, a former employee of the plaintiff, and Aristobilt of Chicago, Inc., Randell's present employer, asking that defendant Randell be restrained from engaging in competition with the plaintiff for a period of five years within a radius of 300 miles from the place of business of plaintiff in Chicago, Illinois, and that defendant Aristobilt of Chicago, Inc. be restrained and enjoined from employing the defendant Randell for the same period of time and within a radius of 300 miles from the place of business of the plaintiff in Chicago, Illinois.

A motion for the issuance of a temporary injunction was referred to a Master, who heard evidence and filed his report recommending the issuance of the temporary injunction. The court on August 14, 1964, entered a temporary restraining order by which the defendant Randell was enjoined from engaging in any

services similar to the type of business conducted by the plaintiff, and the defendant Aristobilt of Chicago, Inc., was restrained and enjoined from employing the said Ralph Randell until the further order of the court. The temporary injunction order of August 14, 1964, placed no limit as to area and on August 17, 1964, an order was entered amending the order entered on August 14, 1964, by inserting the following: "within a radius of 300 miles from the principal place of business of the plaintiff in Chicago, Illinois."

On August 20, 1964, defendant Randell filed a motion to vacate the order of August 14, 1964, and on August 21, 1964, defendant Aristobilt of Chicago, Inc. filed a motion to vacate the order of August 14, 1964. Motions were also made to vacate the order entered on August 17, 1964. The motions of the defendants to vacate the order of August 14, 1964, and the amended order of August 17, 1964 were denied on September 15, 1964, by the court. The defendants appeal from the order entered on September 15, 1964, denying the motions of the defendants Randell and Aristobilt of Chicago, Inc. to vacate the order of August 14, 1964, and the amended order of August 17, 1964, modifying the temporary injunction.

On July 21, 1962, the plaintiff, Aristocrat Window Co., an Ohio corporation, entered into a contract of employment with Ralph Randell, one of the defendants herein. The plaintiff, under the contract, employed the defendant, Ralph Randell, as a branch manager in charge of the company's operations at Chicago, Illinois. Paragraph VIII of the contract reads in pertinent part as follows:

"VIII.   TERMINATION—

(a)   Either party may terminate this agreement for any reason upon thirty (30) days prior notice in writing given to the other party by certified

415

or registered mail. The Company reserves the right to terminate this contract at any time for cause.

(b) For a period of five (5) years after the termination of this Agreement, the employee will not, within a radius of three hundred (300) miles from the present place of business of the employer, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by employer at the time of the termination of this Agreement.

It is specifically understood between the parties hereto that in the event the employee shall leave voluntarily or involuntarily the employment of this Corporation, and shall directly or indirectly own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by employer, and/or perform services for any person, firm or corporation engaged in a competitive line of business with the employer at the time of the termination of this Agreement, then the employer shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to obtain damages for any breach of this Agreement, or to enforce the specific performance thereof by the employee, or to enjoin the employee from performing services for any such other person, firm, or corporation during the period herein contracted for; but nothing herein contained shall be construed to prevent such remedy in the courts, in case of any breach of

416

this Agreement by the employee, as the employer may elect to invoke.

In furtherance of the foregoing employee acknowledges that his position is one of trust and that he will procure in the performance of his duties the knowledge concerning the trade methods and trade secrets of the employer, as well as information concerning its customers and pricing methods, and

Employee further acknowledges that he is competent by training and otherwise to procure employment in many other lines non-competitive with that of the employer."

Despite the fact that under the contract defendant Randell was employed as branch manager to be in charge of the company's operations at Chicago, Illinois, the evidence showed that he was in charge of only the north side branch of the company's operations at Chicago, Illinois.

The quoted portion of the contract provided for termination by either party upon thirty (30) days written notice by certified or registered mail, and that only the plaintiff reserved a right of termination for cause. It also provided for a restrictive covenant of noncompetition, prohibiting defendant Randell upon termination from being connected in any manner or employed directly or indirectly in any business similar to the type of business of plaintiff for a period of five years thereafter and within a distance of 300 miles.

On March 16, 1963 the plaintiff discharged Randell without previous notice, written or otherwise. The plaintiff contends that Randell was discharged for cause. The defendants contend the contract is lacking in mutuality of obligation because the company is given the right to discharge the defendant Randell

for cause, and there is no corresponding obligation on the part of the company, and that at any rate, Randell's discharge was not for cause.

In support of their contention that the contract lacks mutuality, the defendants cite Snyder v. Hamilton, 39 Ill App2d 352, 189 NE2d 97. In that case the court found that under the contract of employment the employer at any time could discharge the employee and there was no redress on the part of the defendant, and it also held that the law in Illinois is that as a general proposition where one of the parties to an agreement has the absolute right to arbitrarily terminate the contract, mutuality is lacking. However, in this case the contract does not give the employer the arbitrary right to terminate the contract. It gives the employer only a right to discharge the employee upon notice or for cause. We do not believe the law supports the defendants in their first contention and we conclude the contract is not void on the grounds that mutuality of obligation is lacking. The employer does not have the arbitrary power to terminate the contract, but may terminate it upon notice or for cause.

The defendants cite M. M. Mitchell Company v. Mitchell, 134 Ill App 214, which supports the proposition that if an employer discharges an employee without justifiable cause it constitutes a breach of the contract by the employer.

The defendants contend that Randell was discharged without cause, and without thirty days prior notice, and such discharge constituted a breach of the contract by the plaintiff. The evidence shows that no written notice terminating the agreement was given by the plaintiff to the defendant Randell.

Ralph Lomaz of Cleveland, Ohio, who is Vice President and General Manager of Weather-Tight Division of Pacific Coast Company, testified for the plaintiff.

418

He stated that the plaintiff is a subsidiary of Weather-Tight. He testified as follows:

"Mr. Randell was not doing his job in a proper manner; that is, he was allowing credit to people who (sic) he had been told specifically and definitely not to allow credit to. He was not performing his duties as a branch manager in the way he was supposed to, to this extent, the warehouse was not kept in order. It was sloppy, it was mismanaged, he was not following instructions from Cleveland properly. In some instances, he was either extremely lackadaisical or openly not following orders from Cleveland, instructions from Cleveland."

He further testified that Randell had received no instructions in writing regarding the matters he testified to. He stated that he visited the warehouse in February and took Mr. Randell into the warehouse; that he showed Randell a number of things that were amiss in the warehouse and told him to get them corrected as quickly as possible. That at that time the temperature in Chicago was 20 degrees below zero and that Randell told him that as soon as it warmed up to zero he would get them done.

The witness further testified that he had not been to Chicago since that visit in February and that Mr. Lashkow, the President of the Company, was there two or three weeks later. He also stated that Randell was not given any written notice of the termination of his contract.

Mr. Bayer, the executive Vice President of the Pacific Coast Company, the plaintiff's parent company, was an officer of plaintiff in March, 1963. He testified that he visited the defendant Randell at the branch office of Aristocrat Window Company on March 16, 1963. He said that he visited Mr. Randell

419

on that occasion because Mr. Randell was not following the company's policy. His warehouse was not in order. That he was present in the branch office when one Howard Katzman was fired by Mr. Lashkow, and that Howard Katzman had said to Mr. Lashkow, regarding the condition of the warehouse, "Don't blame him (Randell), blame me. I am the one. If you don't like what I am doing, fire me."

We have searched the report of proceedings to find the specific reasons for the discharge. The only reasons we can find from the testimony are the statements of plaintiff's witnesses to the effect that the warehouse was a mess; that Randell was not following directions from the home office, and that he was extending credit to customers contrary to instructions from the home office. No customers were identified to whom Randell had extended credit contrary to instructions from the home office, nor was there a description of the policy of the company which Randell had been charged with refusing to follow.

Howard Katzman was called as a witness for the defendant and testified that he had been employed by the plaintiff in this case and had worked under Ronald Bayer, the former President of the plaintiff (and now Vice President of plaintiff's parent company), and later under the defendant Randell. That he was in charge of the warehouse, and his duties included shipping and putting material away. That he was also in charge of keeping the warehouse clean, neat and in order. That he had been trained by Bayer, and there was no difference between the instructions given him by Bayer and the defendant Randell regarding the warehouse. That the conditions of the warehouse were the same under both men—neither cleaner nor dirtier.

He further testified that at the time of the visit of Lomaz to the warehouse in February, 1963, they were in the process of unloading a truck and on the occasion

of the visit of Bayer and Lashkow they were in the process of taking yearly inventory. "We were kind of cleaning house at the same time and it wasn't very neat at this particular time." That they took inventory in approximately the same manner under Randell as under Bayer; that they had been working at inventory about three days at that time, and there was no heat in the warehouse or office. That there was, in his opinion, no difference between the housekeeping practices of the two men.

He also stated that on the day Bayer and Lashkow visited the warehouse about 150 glass inserts brought in from dealers had snapped due to the cold weather and had to be repaired, and it was no warmer inside of the warehouse than it was outside; that the broken glass had accumulated for a couple of days prior to the Bayer and Lashkow visit; that they were preparing for and taking inventory so they hadn't cleaned and swept up; that during inventory he normally swept the floor occasionally; that the practices were the same under Bayer. He further testified that he could not remember a colder winter since he started working at Aristocrat.

Mr. Otto Poppert, who is in the storm window and glass field under the trade name of Popular Window and Awning Company, testified that he knew Randell and Bayer, and that he had done business with the plaintiff since 1957. That he had been in the warehouse when Randell and Bayer were in charge and had never seen any difference in the warehouse practices regarding cleanliness between the two men.

Mr. George Pierson, another witness, who operates under the name of Jimco Home Improvement in the storm door and window field, and who had been a customer of the plaintiff since 1961, testified that he had been in the warehouse frequently, both under Bayer and Randell, and he never noticed any partic-

ular difference between the warehousekeeping practices of Bayer and Randell.

Mr. Lawrence Walker, who is in the storm window, door and awning field under the name of Westchester Window and Awning Company, testified that he did business with the plaintiff when it was managed by Bayer, Randell and DiGrazia. (DiGrazia succeeded Randell as branch manager.) That the credit practices were tighter under Randell than they had been under Bayer because of the installation of a new IBM system. That he had been in the warehouse of plaintiff's Chicago north side branch while each of the above three were managers, and there was no essential difference in the warehousekeeping practices under any of the three men; their housekeeping practices were approximately the same. That he had had experience with Aristocrat's storm windows breaking in very cold weather.

Mr. Seymour N. Bartlett, who operates under the trade name of S. N. Bartlett Company, testified that he has done business with the plaintiff under both Randell and DiGrazia. He had been in plaintiff's warehouse when Randell was in charge and since Randell left, and there is no difference in the housekeeping methods employed while Randell was in charge as compared to those after he left the firm.

The defendant Randell testified that there was little difference between plaintiff's methods and the methods of seven other companies he had worked for; that his credit practices were no different when he worked for the plaintiff in Kansas City than they were in Chicago; that his warehousekeeping was no different in Kansas City than in Chicago. He testified that he had conversations regarding his warehousekeeping practices only with Lashkow; that Bayer and Lashkow were in the warehouse itself in the last part of February; that the inventory was as of March 1st.

The warehouse was cold. That Katzman and Randell were in the balcony consolidating; they had boxes up there and were sweeping out and cleaning up; that they were throwing "stuff" down, and Bayer and Lashkow happened to come in the following morning before they could finish; that Lashkow got into an argument with Katzman and fired him for keeping the place dirty; that a few weeks before that Lomaz was in the warehouse; that there was glass underneath the glazing table, and Lomaz asked Randell to clean up the warehouse and he did so a couple of days later. He also stated that when there is a sharp temperature change the glue used to keep the glass window panes in their frames expands and cracks the glass, and that they fix it up for the customers if it is cracked before it is installed; that the glass under the glazing table at the time Lomaz was there came from such cracked windows; that when Lomaz was there they were loading the trailer, so boxes were taken away, but when Lashkow was there they were taking inventory and had boxes everywhere; that the same things occurred when Bayer was in charge and the warehouse had much the same appearance at such times. That the credit practices followed by Randell were the same as those under Bayer, and Randell never extended more credit than did Bayer.

We have purposely digested the testimony of the witnesses and parties, relative to the warehousing practices of the defendant Randell, as we think this is important on the question as to whether or not he was discharged for cause under the terms of the contract. As mentioned before, the record is silent as to any orders issued by the plaintiff as to the conduct of its business by the defendant Randell, either as to extensions of credit or as to company policy. From an examination of the record in this case it would appear to us that there were extenuating circumstances

as to why there was broken glass on the floor of the warehouse. The temperature was 20 degrees below zero both inside the warehouse and out. The evidence shows that this broken glass, which was caused by the extremely cold temperature, was permitted to remain not more than a couple of days. The other complaint related to a time when an inventory was being made and the defendant Randell and Katzman were sweeping debris from the balcony which debris fell on the main floor of the warehouse. The alleged causes for the discharge appear to us to have no merit.

█ We conclude from the evidence in this case that the discharge of the defendant Randell was without cause, and being without notice was unjustifiable and that the plaintiff breached the contract.

█ The defendants have also raised the point that the negative covenant was unreasonable, in restraint of trade and against public policy. We deem it advisable to discuss this point. The negative covenant restricts the employee from future competition within 300 miles of the "present place of business of the employer for a period of five years." Whether a restriction from engaging in a particular business is reasonable, under all the circumstances of the case and is not in general restraint of trade or against public policy, is a question to be determined by the court under the particular facts of the case. Storer v. Brock, 351 Ill 643, 184 NE 868. We find the following statement of law in 12 ILP section 167:

"An agreement by which an employee, as part of his contract of employment undertakes not to enter into a competing business on leaving his employment usually is valid if its provisions are reasonable, necessary for the employer's protection, and not injurious to the public interests. (William N. Frye, Inc. v. Weber, 1951, 96 NE2d

424

579, 342 Ill App 303; Smithereen Co. v. Renfroe, 59 NE2d 545, 325 Ill App 229; Jules Chain Store Corporation v. Stone, 43 NE2d 849, 316 Ill App 45; Hoops Tea Co. v. Dorsey, 99 Ill App 181). This rule has been applied to agreements by salesmen. (Hoops Tea Co. v. Dorsey, 99 Ill App 181) and managers, (William N. Frye, Inc. v. Weber, 96 NE2d 579, 342 Ill App 303; Jewel Paint & Varnish Co. v. Walters, 89 NE2d 835, 339 Ill App 335; Jules Chain Store Corporation v. Stone, 43 NE2d 849, 316 Ill App 45).

"Such agreements have been held valid where they covered a period of 2 years after leaving employer's business within a 25 mile area surrounding any of the employer's stores, (Jewel Paint & Varnish Co. v. Walters, 1950, 89 NE2d 835, 339 Ill App 335) a period of 5 years within a certain city or village, (William N. Frye v. Weber, 96 NE2d 579, 342 Ill App 303; Smithereen Co. v. Renfroe, 59 NE2d 545, 325 Ill App 229) or a period of 2 years within a certain city or 15 miles thereof. (Jules Chain Store Corporation v. Stone, 43 NE2d 849, 316 Ill App 45)."

In Smithereen Co. v. Renfroe, 325 Ill App 229, 241, 59 NE2d 545, it is said:

"A covenant inserted in a contract for personal service restricting trade or competition, or freedom of employment, is valid and may be enforced in equity, provided it is necessary for the protection of the employer, is not injurious to public interest, and is reasonably limited in time and space. What is reasonable depends upon the facts. (Economy Grocery Stores Corp. v. McMenamy, 290 Mass 549; Sherman v. Pfefferkorn, 241 Mass

468; Becker College of Business Administration and Secretarial Science v. Gross, 281 Mass 355.) . . .

"These contracts containing restrictive covenants which impose restrictions greater than are reasonably necessary for the protection of the former employer's business, or unreasonably restrictive upon the rights of the employee or in contravention of the public interest are held invalid."

The defendant Randell while acting as branch manager of the Chicago branch, North Side Division, worked for the plaintiff for a period of only eight months and within a radius less than twenty miles. As heretofore quoted from 12 ILP section 167, an agreement covering a period of two years after leaving employer's business within a 25-mile area surrounding any of the employer's stores was held valid. Jewel Paint & Varnish Co. v. Walters, 339 Ill App 335, 89 NE2d 835. Likewise a period of five years within a certain city or village was held valid. William N. Frye, Inc. v. Weber, 342 Ill App 303, 96 NE2d 579; Smithereen Co. v. Renfroe, 325 Ill App 229, 59 NE2d 545. Also a period of two years within a city or 15 miles thereof was held valid. Jules Chain Store Corp. v. Stone, 316 Ill App 45, 43 NE2d 849.

In Hursen v. Gavin, 162 Ill 377, 44 NE 735, the court on page 379 said:

"A contract in restraint of trade is thus total and general, when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or State. Such a general contract in restraint of trade necessarily works an injury to the public at large and to the party himself in the respects indicated, and is, therefore, against public policy."

■ By restricting the defendant Randell from engaging in his employment within 300 miles of the north side Chicago branch, the restrictive covenant included the major portion of the area of the state of Illinois, as well as parts of Iowa, Wisconsin, Indiana, and Michigan. Under the facts in this case the 300-mile limitation in the contract is unreasonable, against public policy and the contract therefore is unenforceable.

The evidence in this case conclusively shows that there were no secret processes or secrets of the trade or profession which came to the knowledge of Randell as a result of his employment by the plantiff. Randell, while holding the title of branch manager, was actually a salesman of glass windows and glass doors. The evidence showed that these doors and windows were not manufactured at the Chicago branch office of the plaintiff.

■ Ronald J. Bayer, the main witness for the plaintiff, testified that there were no secret processes in the business. That the only secret or confidential matter was the price list. He admitted that the price lists were sent to all customers and prospective customers. A price list in itself is not necessarily a trade secret as defined by the courts (Snyder v. Hamilton, 39 Ill App2d 352, 360, 189 NE2d 97), and in the instant case the price list was well publicized. On page 360 of the Snyder case the court said:

"It is not seriously contended that customer lists, trade secrets, or confidential information were involved in this matter. The plaintiff does state that the information as to how to function in the school picture business, how customers are sold, and the fine points of sales presentation might be trade secrets, but this view is not the view of our

courts. A trade secret has been held to be a plan or process, tool, mechanism or compound known only to its owner and those of his employees to whom it is necessary to confide it. Victor Chemical Works v. Iliff, 299 Ill 532, 545, 546, 132 NE 806."

The plaintiff in this case has not even proved that the defendant Randell solicited any of plaintiff's customers. The evidence adduced at the hearing from the testimony of customers of the plaintiff was to the effect that Randell had not solicited their business. Some of the customers of the plaintiff testified that they had also been customers of the defendant Aristobilt of Chicago, Inc. prior to the time that Randell became an employee of Aristobilt. Others testified that they sought out Randell and most all of them at the time of the hearing were still customers of the plaintiff.

While the complaint alleged that the plaintiff would suffer irreparable harm unless the injunction issued, Ronald J. Bayer, the former President of the plaintiff and now the Vice President of plaintiff's parent company, testified that he knew of no instance where any action of Randell, since leaving the plaintiff and going to work for the defendant Aristobilt, has been harmful to the plaintiff. In view of his testimony it is difficult to see how the plaintiff would suffer irreparable injury or harm unless the injunction issue.

In the case of Brunner & Lay, Inc. v. Chapin, 29 Ill App2d 161, 167, 172 NE2d 652, the court said:

"Depriving a person of his right to work is a drastic method at best, and should only be invoked where irreparable injury is being done to the employer."

We conclude that the restrictive covenant is invalid and unenforceable for the reason that the area of 300 miles from the city of Chicago under the facts in this case is unreasonable, in restraint of trade and against public policy. The plaintiff has failed to prove that the defendant Randell possessed any trade secrets which he obtained from the plaintiff, and, in fact, there were no trade secrets in plaintiff's business. There is also no proof that the defendant Randell solicited any of the customers of the plaintiff, or that the plaintiff will suffer irreparable harm if the injunction prayed for does not issue. Finally, the contract of employment was breached by the plaintiff when the plaintiff discharged Randell without cause and without notice. The order granting the temporary injunction against both defendants is reversed with instructions to dissolve the temporary injunction.

Reversed and remanded with instructions.

DEMPSEY, P. J. and SCHWARTZ, J., concur.