MARY MARGARET BOOTH, Plaintiff-Appellee, *v.* BERTA B. GREBER, Defendant-Appellant.

First District (2nd Division)   No. 62999

Opinion filed April 19, 1977.—Rehearing denied May 23, 1977.

214

Raymond I. Suekoff and Martin L. Silverman, both of Chicago (Suekoff and Silverman, of counsel), for appellant.

Ronald S. Maione, of Chicago (Dom J. Rizzi and Michael W. Rathsack, of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This is an action to enforce a post-employment restrictive covenant. The plaintiff, Mary Margaret Booth, instituted this action to enjoin the defendant, Berta B. Greber, a former employee of plaintiff, from engaging in an electrolysis business in competition with plaintiff. After hearing evidence, the trial judge entered an order of preliminary injunction. Defendant appeals from that order.

The following issues are raised for our consideration: (1) whether plaintiff has an appropriate business interest for protection by enforcement of a restrictive covenant; (2) whether the restrictive covenant in question is unreasonable as regards the parties and the public; and (3) whether the preliminary injunction granted by the trial court is too broad.

Plaintiff is the owner and operator of an electrolysis business located in Mt. Prospect, Illinois. Electrolysis is the process and procedure for the removal of unsightly hair from the face and other parts of the body by use of an electric needle. It is a lengthy process which requires from 10 to 25 or more treatments. Considerable training is required to become a skilled electrologist.

On June 8, 1974, defendant entered into the employment of plaintiff as an electrologist. She signed an employment contract which contained the following restrictive covenant:

"The Employee will agree to work a minimum of two (2) years for the Employer, and said Employee further covenants and agrees that she will not, during the term of this employment nor for two (2) years immediately following the termination of this said employment, (regardless of whether said termination of this

employment is voluntary or involuntary), establish her own business as an electrologist or work as an electrologist in the area within a 25 mile radius of any location where employer maintains an office, for herself or for any other person or persons, firm, company, partnership or corporation directly or indirectly engaged in electrolysis work."

The contract provided for the termination of employment by either party with one month's notice; but if defendant failed to comply with provisions of the agreement, her employment could be terminated without notice. Defendant's employment was terminated without notice on July 25, 1975. Although defendant's work was excellent, she was dismissed for certain deprecating remarks that she allegedly expressed in the presence of customers regarding plaintiff's professional competency and ability to operate an electrolysis business. Defendant denied making these remarks.

Defendant entered into a lease for her own business on September 15, 1975. The shop opened two weeks later under the name "Electrolysis by Berta." It was also located in Mt. Prospect, approximately three to four miles from plaintiff's shop. Although defendant claimed she did not seriously think of going into business for herself until after her dismissal, defendant did make one inquiry of a company regarding electrolysis equipment while still in plaintiff's employ. To generate business, defendant sent letters of introduction to dermatologists who could refer clients to her. Advertisements were placed in local newspapers. Also, defendant and her secretary, Janice O'Keefe, contacted 49 customers of plaintiff to inform them of her new business. Thirty-three were telephoned, and the rest were mailed new business cards. Of the persons contacted, 24 left plaintiff and became customers of defendant. Five new patients had been independently developed by defendant at the time of the hearing.

Defendant denied that she copied plaintiff's records. She testified that she developed a customer list by recalling from her memory, in collaboration with Mrs. O'Keefe (who had worked for plaintiff during the same period of time as defendant), the names of plaintiff's customers whom she had treated. The addresses and phone numbers were found in the telephone directory. They developed a list of approximately 50 from the more than 1,000 customers defendant had seen in plaintiff's shop.

Since defendant was discharged, plaintiff has been the sole electrologist in her shop. Her income has decreased, but this is due solely to the fact that she cannot handle more patients alone. Plaintiff treats in excess of 100 patients per week. A new customer need wait about three weeks for an appointment with her unless there is a cancellation. There have been

more cancellations than usual since defendant left, and the customer waiting list is down from 60 to 20 names.

There are many. electrolysis shops in the greater Chicagoland area, within and outside a 25-mile radius of plaintiff's shop. Ten shops are listed in the telephone directory for Mt. Prospect and surrounding villages, and one electrolysis business is located in the same building as plaintiff. Plaintiff has been the owner of her shop for three years.

Defendant testified that she did not seek employment in a business more than 25 miles away because she wanted to work close to home. Her son is a five-year-old in kindergarten, and her husband has been disabled on several occasions in the last four years. They purchased a home while she was still in plaintiff's employ and could not move to another location without great difficulty.

The trial judge granted a preliminary injunction, enjoining defendant from working as an electrologist and from operating an electrolysis business within a radius of 25 miles from plaintiff's business, and in particular from operating an electrolysis business known as "Electrolysis by Berta," located in Mt. Prospect, for a period of two years. This appeal followed. Enforcement of the preliminary injunction was stayed pending disposition of this appeal.

## I.

■■ This appeal is taken from the issuance of a preliminary injunction (Ill. Rev. Stat. 1975, ch. 110A, par. 307(a)). In order to obtain a temporary or preliminary injunction, a movant must establish irreparable injury and the likelihood of success on the merits. Likelihood of success on the merits does not mean a showing which will in all events warrant relief in the final hearing. Rather, it means the movant must convince the trial court that he is probably entitled to the relief prayed for if the proof should sustain his allegations. (*Grillo v. Sidney Wanzer & Sons, Inc.* (1st Dist. 1975), 26 Ill. App. 3d 1007, 1013, 326 N.E.2d 180; *Wessel Co. v. Busa* (1st Dist. 1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414.) In addition, the trial court must also conclude that the granting of the temporary relief outweighs any possible injury which defendant might suffer by its issuance. *Professional Business Management, Inc. v. Clark* (3d Dist. 1967), 83 Ill. App. 2d 236, 241, 227 N.E.2d 371.

The issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion. Its findings will not be disturbed unless they are against the manifest weight of the evidence. (*Revcor, Inc. v. Fame, Inc.* (2d Dist. 1967), 85 Ill. App. 2d 350, 356, 228 N.E.2d 742.) A reviewing court should confine itself to a determination of whether the trial court has properly exercised its broad discretionary powers; each substantive

issue should be considered only insofar as necessary to determine whether there has been an abuse of discretion. *Wessel Co. v. Busa* (1st Dist. 1975), 28 Ill. App. 3d 686, 690.

■■ In the case at bar, the propriety of the preliminary injunction is dependent on the enforceability of the restrictive covenant in question. Enforceability is conditioned upon its reasonableness in terms of its effect upon the parties to the contract and to the public. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21.) The test of enforcement is whether the covenant, under the circumstances of the particular case, is reasonably necessary for the protection of the employer's business against competition by methods commonly regarded as improper or unfair. The covenant is unenforceable when its purpose is the prevention of competition *per se. Vander Werf v. Zunica Realty Co.* (1st Dist. 1965), 59 Ill. App. 2d 173, 177, 208 N.E.2d 74.

## II.

■■ Defendant first asserts plaintiff does not have a protectable interest in her business which requires restraint of her former employees. Numerous cases are cited in support of her argument that because there are no trade secrets or secret processes involved in plaintiff's electrolysis business, plaintiff's interest in her customers is not proprietary, and hence, not appropriate for protection by enforcement of the covenant not to compete. We find all of the cases to be distinguishable. None of defendant's cases involved a pattern of customer solicitation, and none involved a business whose customer relationship was long-term and whose former employee, but for her association with the business, would not have had contact with the customers. Indeed, some of defendant's cases explicitly recognize that an employer is entitled to be free of solicitation of clients by past employees. See, *e.g., House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d at 38; *In re Solar Textiles Co. v. Fortino* (1st Dist. 1964), 46 Ill. App. 2d 436, 443, 196 N.E.2d 719; and *Snyder v. Hamilton* (3d Dist. 1963), 39 Ill. App. 2d 352, 360, 189 N.E.2d 97.

Protection of an established clientele from takeover by a former employee has been recognized as a legitimate interest of an employer. In *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648, the plaintiff was a veterinarian with an established practice in Rushville, Illinois. He entered into an association with the younger defendant. Defendant had one year of experience as a veterinarian and was a stranger to the area. Plaintiff guaranteed him an annual salary; in return defendant covenanted not to practice in the area for five years after leaving the association. Plaintiff brought suit to enforce the restrictive covenant shortly after the association terminated. In affirming the circuit court's injunction, the court stated:

"In bringing the defendant into the association plaintiff was thereby bringing him in contact with a clientele which plaintiff had established over a period of years. Plaintiff was naturally interested in protecting his clients from being taken over by defendant as a result of these contacts. The protection of this asset is recognized as a legitimate interest of an employer." 51 Ill. 2d 179, 184.

*Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433 also involved a suit to enjoin a doctor from practicing in a certain area in violation of a restrictive covenant. Defendant, a dermatologist, became associated with a group of doctors in Rockford, Illinois. He agreed to not practice within 25 miles of Rockford for a three-year period after terminating his association. Defendant subsequently resigned and commenced his own practice in Rockford. The court upheld the restrictive covenant. It stressed that defendant had never lived in Rockford before joining the association and he had not brought any patients with him. It was solely through the opportunities provided by the association that he became known in the area. Defendant's promise to temporarily refrain from practicing in the area was held to be one of the considerations upon which the association accepted him and guaranteed him a substantial income. 44 Ill. 2d 49, 52.

In the case at bar, plaintiff has developed a clientele over a period of three years. Many patients undergo treatment for long periods of time. But for her association with plaintiff, defendant would not have had contact with plaintiff's clientele. By directly soliciting plaintiff's customers, defendant infringed upon a legitimate, protectable interest of plaintiff. The effect of the covenant's enforcement is not prevention of competition *per se.*

### III.

■■ Defendant next contends that the covenant in question is not reasonable as regards the parties and the public. Although plaintiff's income has apparently not suffered by defendant's actions, she has lost 24 patients to defendant. Her waiting list for appointments is down from approximately 60 names to 20 names. The trial court found that plaintiff suffered, and would continue to suffer, irreparable injury. This finding is supported by the evidence.

Although defendant does not argue that the two-year time prohibition is unreasonable, she maintains that the geographical limitations of the covenant are broader than reasonably necessary for protection of any legitimate interest of plaintiff. Whether the prohibitions of a restrictive covenant are unreasonably broad depend on the particular facts of the case. In *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 184, the restrictive covenant prohibited defendant from practicing within 30 miles of

plaintiff's office for five years. Plaintiff requested an injunction which reduced the restriction to a radius of 20 miles, which was granted by the circuit court. The reviewing court affirmed and noted that the evidence indicated plaintiff's clients were scattered throughout the 20-mile radius. A decision of enforcement was also reached on similar grounds in *Canfield v. Spear* (1969), 44 Ill. 2d 49, 51, regarding a restraint within a 25-mile radius for a period of three years. *Jewel Paint and Varnish Co. v. Walters* (1950), 339 Ill. App. 335, 89 N.E.2d 835, involved a suit to enjoin a former manager of a paint store from working for a nearby competitor. The defendant had agreed to a restrictive covenant which restricted him from engaging in a similar business for two years after termination of his employment and within an area of 25 miles surrounding plaintiff's stores in Elgin, Joliet, Aurora, and Ottawa. The reviewing court affirmed the circuit court's injunction according to the terms of the covenant. The court reasoned that the good will which plaintiff's store enjoyed would continue if defendant left the territory or went into another business, but would be partially lost if defendant joined a competitor in the proscribed area. 339 Ill. App. 335, 344.

■■■ We think the restrictive covenant in question here is reasonable in its geographical limitations. The list of customers who switched to defendant's shop (admitted into evidence) shows plaintiff attracted clients from as far away as the communities of Mundelein and Elmwood Park.[1] Thus, there is some indication in the record that plaintiff's clients are located in greater than just the immediate area of plaintiff's office. This is sufficient to sustain the trial court's finding for purposes of a preliminary injunction that defendant was working as an electrologist within 25 miles of plaintiff's business.

■■ Defendant also argues that enforcement of the restrictive covenant would work an undue hardship on her. She points out that she must work near home to care for her five-year-old son, but cannot move because she recently purchased a home in a nearby community. However, she also testified that her husband is often disabled and must stay at home. He presumably could take care of the child when the child is not attending kindergarten. There is evidence of many electrolysis shops outside the proscribed area. Defendant was fully aware of what she was doing when she entered into the employment contract. She has accepted the benefits of the contract and must accept the burdens as well. (*Canfield v. Spear* (1969), 44 Ill. 2d 49, 52.) It is not unreasonable to require her to be bound by the terms of the agreement she entered into.

The restraint on the public must also be considered. There are many

---

[1] We have not been able to locate in the record the mileage between such points. We can take judicial notice of the fact that each of these points is located at least 10 miles from the village of Mt. Prospect.

electrolysis shops in plaintiff's area, including one in plaintiff's building. Persons desiring electrolysis treatment can easily obtain it. The public will not be harmed by affirming the trial court's preliminary injunction.

## IV.

■■ Finally, defendant argues that the preliminary injunction is broader than reasonably necessary to restore the parties to the status quo until the case can be disposed of on the merits. In her view, the trial court could have insured maintenance of the status quo by temporarily enjoining defendant from soliciting or treating any of plaintiff's customers. (See *Wessel Co. v. Busa* (1st Dist. 1975), 28 Ill. App. 3d 686, 693.) However, the trial judge had broad discretion in this matter. Considering the likelihood of plaintiff's ultimate success on the merits, we do not think it was an abuse of discretion for the trial court to grant the preliminary injunction according to the terms of the restrictive covenant.

For the foregoing reasons, the order of preliminary injunction of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.