THE WESSEL COMPANY, INC., Plaintiff-Appellant, *v.* JOHN BUSA, Defendant-Appellee.

(No. 60832;

First District (4th Division)—April 23, 1975.

*Rehearing denied June 12, 1975.*

Sherwin J. Stone and David C. Roston, of Lieberman, Levy, Baron & Stone, Ltd., of Chicago, for appellant.

Daniel Nagle, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, The Wessel Company, Inc., filed an action for injunctive relief against defendant, John Busa, seeking to enforce a postemployment restrictive covenant. On July 30, 1974, the court entered an interlocutory order denying plaintiff's amended motion for a temporary injunction. Plaintiff appeals from the denial of that motion.

As alleged in its complaint, plaintiff is an Illinois corporation engaged in the business of printing and having a principal place of business in Chicago, Illinois. On July 24, 1972, plaintiff and defendant entered into a written contract whereby plaintiff employed defendant to solicit,

procure, and administer its printing business. The case at bar arises out of the following restrictive covenant contained in the contract:

"6. *RESTRICTIVE COVENANT.* For a period of three years after the termination of this agreement, irrespective of the time, manner or cause of termination, employee covenants and agrees that he will not directly, or indirectly, either as principal, agent, employee, employer, stockholder, co-partner or any other individual or representative capacity whatsoever

(a) solicit, serve or cater to, or

(b) engage in, assist, be interested in or connected with any other person, form [sic] or corporation or other entity soliciting, serving or catering to, any person, firm, corporation or other entity with whom or which The Wessel Company has done or sought to do business within the area encompassed by a radius of 250 miles from the Metropolitan area of New York City, dur-the two years immediately prior to the date of termination of this agreement.

The Wessel Company and employee agree that, in the event of a breach of the covenants contained in this Paragraph 6, the remedy at law would be inadequate and The Wessel Company may obtain injunctive or any other equitable relief to prevent such breach."

The complaint further alleges that on December 31, 1973, defendant's employment was terminated and that defendant thereafter solicited and sold printing services to plaintiff's customers in violation of the restrictive covenant.

On July 26, 1974, plaintiff filed an amended motion for a temporary injunction seeking to enjoin defendant from soliciting or serving four named customers doing business in the metropolitan area of New York. In support of its motion plaintiff alleged that defendant continued to violate the restrictive covenant by soliciting plaintiff's customers and using confidential information he acquired during the course of his employment, and that unless a temporary injunction was issued, plaintiff would suffer irreparable injury.

On July 30, 1974, a hearing was conducted on plaintiff's amended motion for a temporary injunction. The sole witness at the hearing was Robert Newton, executive vice-president of The Wessel Company. Newton described the company as commercial printers solely employing the web offset press. Their specialty products are those that are utilized in large quantities and typically include such items as gasoline credit cards, subscription postcards, and retail store credit inserts.

Newton explained that this type of business is highly competitive,

and that what distinguishes one company from another is its ability to price and service effectively. Accordingly, the company created files containing confidential pricing information and customer requirements accumulated over its 15-year history. More specifically, the files contained information concerning the uses of plaintiff's products, the products customers were using, the prices they were paying, and the particular customer's product requirements. The files also contained detailed information on those purchasing agents who had dealt with the company including their particular needs and past history with the company. Newton stated that in his opinion such information was essential to the establishment of customers. During his employment with plaintiff, defendant was granted full access to the files. In view of its confidential nature this information was not made available to plaintiff's competitors. Defendant was also given a list of plaintiff's customers to assist him in his solicitation of business, which list was subsequently introduced into evidence.

At the hearing Newton remarked that defendant was hired in the capacity of a salesman, but emphasized that the position denoted more than just order taking. It encompassed a determination of customer requirements, the initial solicitation of customers, the follow up of an order into actual production of the product, and the continued service of a customer with the goal of making him a long time purchaser. During his tenure with the company, defendant worked out of New York and serviced customers in Massachusetts, New York, New Jersey, Pennsylvania and Indiana. On December 3, 1973, defendant's employment was terminated by mutual agreement.

As stated by Newton, defendant became an employee of Continental Web Offset shortly after leaving plaintiff company. During his employment with Continental Web Offset, defendant sold printing services to several of plaintiff's customers, namely, Penthouse International Limited, Times Mirror Publishing Company, Fawcett Publications, and Rap, Collins, Stone & Adler, Inc. Newton further stated that since December 3, 1973, plaintiff has failed to secure any business from the above firms, and that plaintiff therefore was requesting a temporary injunction to restrain defendant from soliciting business and selling services to those four firms.

On cross-examination Newton testified that plaintiff learned of defendant's employment with Continental Web Offset from one of its customers. That same company further informed plaintiff that its business had been solicited by defendant. Newton stated that if defendant were not enjoined from further solicitation of the four named companies, it would be very difficult to ascertain plaintiff's loss of profits.

██ From the outset we must stress that this appeal is from the denial of a temporary injunction. The substantive issues of the instant case have not been decided. The sole role of an appellate court in addressing the grant or refusal of an interlocutory decree is restricted to a determination of whether the trial judge correctly exercised his broad discretionary powers. (*Grillo v. Wanzer*, 26 Ill.App.3d 1007, 326 N.E.2d 180.) Therefore, each substantive issue will be considered only so far as is necessary to determine whether the judge abused his discretion.

██ In order for a preliminary injunction to issue, the movant must establish both irreparable injury and likelihood of success on the merits. (*Grillo v. Wanzer*, 26 Ill.App.3d 1007, 326 N.E.2d 180.) It must be noted, however that in order to show a likelihood of success on the merits, a party is not required to make out a case which in all events will warrant relief in the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should stay as they are until the court has had an opportunity to consider the case on the merits. (*Frederick Chusid & Co. v. Collins Tuttle & Co.*, 10 Ill.App.3d 818, 295 N.E.2d 74.) Clearly, in the case at bar such a showing is dependent upon the enforceability of the restrictive covenant in question.

██ Unquestionably, postemployment restrictive covenants infringe upon the economic mobility of employees as well as their freedom to follow personal interests, and must be regarded at least to some extent as a restraint of trade. For these reasons such covenants are carefully scrutinized by the courts. It is equally clear, however, that restrictive covenants do serve a real and measureable social utility in that they protect the employer from an unwarranted erosion of confidential information, and thereby foster the growth of innovative ideas. Thus, in all instances where courts are faced with the decision of whether to enforce a particular post-employment restriction, they must balance its social utility against its adverse effect on both the covenantor and the public. As recognized by plaintiff and defendant in the case at bar, the courts have employed a basic reasonableness test to determine the validity of the restraint. Accordingly, we are now asked to determine on the basis of the evidence produced at the hearing on plaintiff's motion for a temporary injunction whether it would be an abuse of discretion for the trial judge to find that the instant restriction is unreasonable.

Defendant does not deny that his conduct is in direct violation of the restrictive covenant agreed to by him. Rather, he contends that the covenant is void because it is unreasonable to prohibit him from solicit-

ing plaintiff's customers for a period of 3 years within a 250-mile radius of New York City. We are not so persuaded.

The standards to be applied in determining the validity or reasonableness of a contract in restraint of competition were set forth by our supreme court in *House of Vision, Inc. v. Hiyane*, 37 Ill.2d 32. The court stated:

> " 'In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee. [Citations.]' " (37 Ill.2d 32, 37.)

Each case must be determined according to its own particular facts and circumstances which by necessity vary as to time, area, and degree of confidential relationship between employer and employee. *Barrington Trucking Co. v. Casey*, 117 Ill.App.2d 151, 253 N.E.2d 36.

No serious contention can be made that the instant covenant is injurious to any legitimate interest of the public. Regardless of whether the convenant is enforced, all members of the public are free to seek services from any of plaintiff's competitors, and conversely, plaintiff's competitors are free to solicit their business. It is also clear from the record that the covenant in question does not work any undue hardship on defendant. The covenant does not seek to deny defendant's right to engage in competitive business, nor to be so employed. It seeks only to restrain defendant from soliciting those firms with which plaintiff has done or sought to do business. As stated by Newton at the hearing, those firms are approximately 50 to 60 in number. Newton further stated that there are as many as 300 to 400 potential customers within the restricted area. Thus, if the covenant were enforced, defendant nevertheless would be able to continue his trade in a broad market that is unrestrained by the covenant. It remains only to be determined whether the instant restriction is greater than necessary for the protection of plaintiff.

■■ As stated above, each case necessarily depends upon its own facts and circumstances. Accordingly, those covenants not to compete which have been enforced in Illinois have varied extensively in both geographic and time limitations. (See, *e.g.*, *Jewel Paint & Varnish Co. v. Walters*, 339 Ill.App. 335, 89 N.E.2d 835; *William N. Frye, Inc. v. Weber*, 342 Ill.App. 303, 96 N.E.2d 579 (abstr.); *Central Keystone Plating v. Hutchison*, 62 Ill.App.2d 188, 210 N.E.2d 239.) Nevertheless, there are common factors which are consistently considered in determining the reasonableness as to time and space. With regard to geographic limitations, the courts particularly look to whether the restricted area is co-

extensive with that in which the promisee is doing business. Of course, this consideration merely recognizes that any larger area would extend beyond that which is necessary for the protection of the promisee. The uncontroverted evidence in the case at bar establishes that plaintiff conducts business operations throughout the area in which defendant is sought to be enjoined. We further note that while this area is quite extensive, the restraint is directed only toward the solicitation of a few customers within that territory. The covenant is not absolute, but rather seeks only to impose such geographic limitation as is necessary to protect plaintiff. With regard to time limitations, the courts have enforced restraints of up to 5 years in duration so long as the geographic limitation is reasonable. (See, *e.g., Canfield v. Spear,* 44 Ill.2d 49; *Smithereen Co. v. Renfroe,* 325 Ill.App. 229, 59 N.E.2d 545.) The instant covenant seeks a 3-year limitation and in our opinion reasonably reflects that period in which plaintiff requires protection.

We have examined the cases cited by defendant and find them to be distinguishable. Unlike the case at bar, those decisions involve an appeal from a trial on the merits rather than the denial of a temporary injunction. We note further that they involve either an absolute bar on competition, an unlimited time restriction, or a situation wherein the plaintiff has failed to demonstrate the necessity of the covenant for the protection of his business. These factors are not present in the case at bar. The uncontroverted evidence indicates that the instant restriction is tailored in all respects so as not to exceed those limitations which are necessary for the protection of plaintiff.

As defendant points out, a temporary injunction may not be issued where there is no showing of irreparable injury. Thus, having established the reasonableness of the instant restriction, and correspondingly plaintiff's likelihood of success on the merits, we now must consider whether plaintiff has established the necessity for temporary injunctive relief. Defendant contends that plaintiff is not entitled to such relief since it has failed to show irreparable injury. We disagree.

■■■ In an area where the market approaches perfect competition, customer contact is a particularly sensitive aspect of business. Newton explained that plaintiff's business involves such a market, and that the ability to price and service effectively are essential to the development and maintenance of customers. We emphasize that defendant's employment exceeded traditional boundaries of salesman responsibilities. It involved extensive customer contact and intimate knowledge of customer requirements. As a sole consequence of defendant's employment, plaintiff disclosed to him its confidential pricing procedure and the years of accumulated data upon which it was based. The uncontroverted evi-

dence shows that if defendant is permitted to continue his course of action in violation of the restrictive covenant, plaintiff's longstanding relationship with certain customers may be irrevocably disrupted, and that plaintiff has lost or will lose their business. Illinois case law fully supports the proposition that an employer is entitled not to have his old customers enticed away from him. (*Snyder v. Hamilton*, 39 Ill.App.2d 352, 189 N.E.2d 97.) We conclude that plaintiff has shown special circumstances sufficient to warrant the issuance of temporary injunctive relief. Defendant's argument that there was no evidence offered by plaintiff showing the specific amount of lost profits or irreparable damage caused by defendant is groundless. This remains an issue to be determined when the cause is tried on the merits.

■■ Finally, the purpose of a temporary injunction is to secure emergency relief in order to restore the parties to the *status quo ante litem*. (*John Deere Co. v. Hinrichs*, 36 Ill.App.2d 255, 183 N.E.2d 309.) In the case at bar plaintiff seeks to enjoin defendant from soliciting or serving only four of plaintiff's customers during the pendency of this action. This is precisely the relief necessary to maintain the *status quo ante litem*. Accordingly, we hold that plaintiff's amended motion for a temporary injunction is proper insofar as the extent of relief it seeks.

For the reasons set forth above, the order of the circuit court denying the issuance of a temporary injunction is reversed and remanded with directions to enter the temporary injunction pending the disposition of the case on its merits.

Reversed and remanded with directions.

DIERINGER, P. J., and ADESKO, J., concur.