DONALD McELROY, INC., Plaintiff-Appellee, *v.* JOHN F. DELANEY *et al.*,
Defendants-Appellants.

First District (4th Division)   No. 77-972

Opinion filed April 26, 1979.

Michael H. King, Robert M. McGreevey, and Antonow & Fink, all of Chicago (Kenneth A. Lapatine and Carro, Spanbock, Londin, Rodman & Fass, of New York, New York, of counsel), for appellants.

Theodore R. Tetzlaff and Michael H. Salsbury, both of Chicago (Jenner & Block, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

This is an action to enforce post-employment restrictive covenants. Plaintiff, Donald McElroy, Inc. (McElroy), instituted this suit in the circuit court of Cook County to enjoin defendant, John F. Delaney, a former employee of plaintiff, and defendants, Spiral Metal Co., Inc., (Spiral) and Industrial Silver Co. (Industrial), Delaney's present employers, from violating certain nonsolicitation and nondisclosure covenants. After hearing evidence, the trial court granted plaintiff's amended motion for a preliminary injunction to prevent violation of the restrictive covenants. On appeal, defendants contend: (1) that plaintiff failed to establish a legitimate business interest protectible by restrictive covenant; (2) that the restrictive covenants sued upon are unreasonable in terms of time, area and scope; (3) that plaintiff has not shown threatened irreparable injury; (4) that the preliminary injunction granted by the trial court is an invalid attempt to reform an otherwise unenforceable covenant; and (5) that the preliminary injunction order is indefinite and not subject to enforcement.

We affirm the trial court.

Plaintiff McElroy is an Illinois corporation engaged in the business of recovering silver from photographic waste material. It is undisputed that defendant Spiral, through its subsidiary, Industrial, competes with McElroy in the silver recovery business.

Photographic wastes are commonly supplied by hospitals, clinics, radiologists, lithograph printers and industrial X-ray houses. There are two forms of photographic waste material from which silver is extracted. Exposed photographic film is purchased in bulk from the suppliers and shipped to a refinery for the purpose of extracting the silver content. The amount of silver extracted during this refining process is called the "yield." Photographic fixer solution provides silver flake, a light sensitive material containing silver which is removed from film during the developing process. Silver recovery companies obtain the silver content of the fixer solution either by purchasing the used solution from the supplier and then extracting the silver through a refining process or by purchasing the silver flake which had already been extracted by the supplier on site through use of reclaiming equipment which is physically attached to the photographic equipment. These reclaiming units are sold or leased to the supplier by the silver recovery company.

In April 1970, defendant Delaney was hired by McElroy to work as its purchasing manager. Delaney orally agreed to certain nondisclosure and nonsolicitation covenants as a condition of his employment. Sometime after Delaney commenced his employment with McElroy, he signed a written employment agreement which contained restrictive

covenants. There is some dispute concerning the exact content of that written agreement. At trial, McElroy submitted a document purporting to be the written agreement signed by Delaney. However, the signature page had been removed from the copy submitted. Delaney admittedly signed some form of agreement containing restrictive covenants, but contends the one submitted by McElroy is not an exact copy of that agreement. Delaney was unable to produce any other agreement.

For the purpose of the preliminary injunction, the trial court found that the agreement containing the restrictive covenants sued upon by McElroy was executed by Delaney. After reviewing the record, we find sufficient evidence to support the trial court's finding on this matter. The restrictive covenants contained in that agreement stated in pertinent part:

> "Employee agrees that he shall not at any time (whether during or subsequent to his employment hereunder), without the prior written consent of the Company, disclose to any person or entity: (a) the identity of, or any other information concerning, any such source of supply with whom Employee may have had contact during his employment with the Company; or (b) any other secret or confidential information of the Company divulged to Employee in confidence during his employment hereunder.
>
> Within the 1095-day period next following the termination of Employee's employment hereunder, Employee shall not engage in any purchasing activity (whether or not leading to a consummated purchase and sale) which concerns materials of the sort purchased by Employee on behalf of the Company hereunder and which involves either of the following:
>
>> (a) negotiations with a prospective seller with whom Employee has had contact concerning actual or proposed purchases on behalf of the Company during his employment hereunder; or
>>
>> (b) negotiations with a prospective seller from whom the Company has, at any time within the 365-day period prior to the termination of Employee's employment hereunder, purchased salvageable materials."

During the first five years of his employment with McElroy as its purchasing manager, Delaney was responsible for sales, marketing and purchasing. His responsibilities included soliciting purchases from suppliers, training sales representatives and developing a territory consisting of the eastern two-thirds of the United States. In 1975, Delaney was named McElroy's executive vice-president. In this position, Delaney devoted most of his time to administrative and supervisory tasks, rather than solicitation of customer accounts. As executive vice-president, Delaney negotiated agreements with other McElroy employees

containing restrictive covenants similar to the ones in question and instituted actions to enforce compliance with these restrictions.

Delaney remained in the employ of McElroy for seven years, until March 2, 1977. On April 5, 1977, Delaney began employment with defendants Spiral and Industrial. Shortly after joining Spiral and Industrial, Delaney called upon several of McElroy's suppliers. Within a matter of weeks after Delaney joined Spiral and Industrial, McElroy initiated this action to enforce the restrictive covenants.

At the hearing on plaintiff's motion for preliminary injunctive relief, the following evidence was produced in addition to the facts set out above. Hundreds of companies participate in the competitive market for recovering silver from photographic waste material. Possible sources of supply, such as hospitals and X-ray companies, are easily ascertainable from listings in telephone directories and specialized medical directories. These suppliers sometimes deal with more than one silver recovery company at the same time.

In the market for photographic film, silver recovery companies submit bids to suppliers calculated on the basis of a number of factors, including the type of film involved and the estimated quantity of silver which can be extracted from the film. McElroy's parent corporation, AgMet, which performs the refining process, provides the yield figures which are used in calculating McElroy's bids on photographic film. Robert E. Conner, McElroy's current chief executive officer, testified that these yield figures are not disseminated outside the AgMet corporate family. Delaney testified that in calculating bids for Industrial he is required to use Industrial's yield figures. Companies which manufacture photographic film publish anticipated silver yields for their film; however, the testimony indicates that each silver recovery company uses its own yield figures rather than the film manufacturers' statistics.

In the silver flake market, McElroy enters into contracts with suppliers under which the supplier is required to buy or lease reclaiming equipment provided by McElroy and to grant McElroy the right to purchase all silver flake recovered by that equipment. The supplier under contract with McElroy agrees not to disclose any information concerning the operation or recovery capabilities of the reclaimer units. Bids for silver flake are calculated by formulae utilizing yield figures based on the recovery capabilities of the equipment used. Delaney testified that these formulae were treated as confidential information by McElroy employees, but that the formulae were based on well known principles. Conner stated that Delaney was the only one who knew all the components used in determining McElroy's bids.

The reclaiming equipment used by McElroy is manufactured exclusively for McElroy by Medical Innovations. The reclaimer equipment

manufactured by other companies, including equipment used by Spiral and Industrial, performs the same function as the Medical Innovations machines, although the design and recovery capabilities of the various types of equipment differ.

During his employment with McElroy, Delaney contacted an estimated 60 to 70 percent of the large hospital suppliers within his territory. Delaney stated that the objective of such solicitations was to open key accounts in his service area. Delaney acted as the primary representative to several of these accounts. After his elevation to vice-president, Delaney continued to review bids for film and proposals for the placement of machinery and acted as an intermediary between his salesmen and the suppliers.

Before becoming employed by McElroy, Delaney held positions in other companies which required contact with medical facilities, and he also worked as an independent silver broker. Delaney stated that after he became employed by McElroy, he solicited some of these former contacts as potential silver suppliers.

During the hearing, plaintiff was allowed to amend its motion for preliminary injunctive relief to conform to the evidence presented. At the conclusion of the hearing, the trial court entered a preliminary injunction order. Under the terms of the order, defendants are preliminarily restrained from disclosing any confidential information acquired by Delaney while with McElroy; all defendants are preliminarily restrained from interfering with McElroy's contracts for the purchase of silver flake;[1] Delaney is preliminarily restrained from contacting, and Spiral and Industrial are prohibited from using Delaney's name or information in contacting, those suppliers from whom McElroy had purchased salvageable silver in a transaction in which Delaney was personally involved. The trial court refused to enjoin Delaney from contacting McElroy suppliers with whom he had not been personally involved. Finally, the trial court ordered Delaney to return to McElroy any confidential lists or records he had retained. Defendants appeal from this order.

OPINION

█ █ This is an interlocutory appeal from the issuance of a preliminary injunction. (Ill. Rev. Stat. 1977, ch. 69, par. 3.) For a preliminary injunction to issue, the plaintiff must establish the threat of irreparable injury and the likelihood of success on the merits. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) A likelihood of success on the merits does not require a showing which is sufficient to warrant relief after

---

[1] During the hearing, defendants agreed that they would not interfere with McElroy's existing contracts for silver flake.

a final hearing. The plaintiff, however, must establish to the satisfaction of the trial court that he will probably be entitled to the relief requested if the proof should sustain his allegations. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414; *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180.) The trial court must also conclude that the need for temporary relief outweighs the possible detriment to the defendant. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.

The issuance of a preliminary injunction is addressed to the sound discretion of the trial court. Thus, on appeal, the reviewing court's consideration is limited to whether the trial court properly exercised its broad discretionary powers in granting the temporary relief. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) Accordingly, we must determine whether, on the basis of the evidence produced at the hearing on McElroy's motion for a preliminary injunction, the trial court abused its discretion in entering the preliminary injunction order. Each substantive issue will be considered only insofar as necessary to determine whether there has been an abuse of the trial court's discretion.

■■■ The enforceability of a restrictive covenant is conditioned upon its reasonableness. In determining whether the covenant is reasonable, it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the covenantor, and whether the restraint imposed is greater than necessary to protect the covenantee. (See *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.) The court must consider, in the circumstances of each case, the legitimate interests of the covenantee which might be protected by the covenant and the protection granted by the covenant in terms of time, space and the types of activity proscribed. (*Smithereen Co. v. Renfroe* (1945), 325 Ill. App. 229, 59 N.E.2d 545.) Whether the covenant will be deemed enforceable depends upon the totality of these circumstances.

## I.

Defendants first contend that McElroy has failed to establish that the restrictions imposed were reasonably necessary to protect a legitimate business interest. Defendants contend that Delaney's familiarity with customers and their requirements is not an interest that would justify a restraint. We disagree.

■■ In a highly competitive business, personal customer contact and the insider knowledge of the customer's requirements are important to the continued success of the business. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) Where, by virtue of his employment, an employee obtains certain confidential information relating to bidding procedures and customer requirements and acquires an advantage

through representative contact with the trade in the area of their application, the employer has a right to protect himself from the disadvantageous use of that information.

Courts have not hesitated to enforce restrictive covenants where an employee has acquired confidential information relating to customer requirements. In *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414, the plaintiff, a commercial printing company, filed an action to prevent the violation of an employee's post-employment covenant not to compete with the plaintiff for two years after terminating his employment. As a result of his employment, the defendant had obtained access to confidential information regarding the requirements of plaintiff's customers. In reversing the trial court's denial of temporary injunctive relief, the appellate court stated:

"In an area where the market approaches perfect competition, customer contact is a particularly sensitive aspect of business. [The employer] explained that [its] business involves such a market, and that the ability to price and service effectively are essential to the development and maintenance of customers. We emphasize that defendant's employment exceeded traditional boundaries of salesman responsibilities. It involved extensive customer contact and intimate knowledge of customer requirements. As a sole consequence of defendant's employment, plaintiff disclosed to him its confidential pricing procedure and the years of accumulated data upon which it was based. The uncontroverted evidence shows that if defendant is permitted to continue his course of action in violation of the restrictive covenant, [the employer's] longstanding relationship with certain customers may be irrevocably disrupted, and that plaintiff has lost or will lose their business. Illinois case law fully supports the proposition that an employer is entitled not to have his old customers enticed away from him." 28 Ill. App. 3d 686, 692-93, 329 N.E.2d 414, 419.

*Smithereen Co. v. Renfroe* (1945), 325 Ill. App. 229, 59 N.E.2d 545, involved a suit to prevent a former manager of plaintiff's exterminating business from establishing a competitive business in violation of post-employment covenants. In holding that the covenants were reasonably required to protect plaintiff's interest because the defendant had acquired customer contacts and confidential information during the course of his employment, the court stated:

"From this evidence it is clear that the defendant has violated his contractual obligation not to engage in competition with the business of plaintiff; that the defendant is availing himself of information with respect to the names of customers and the methods, formulae, etc., used by the plaintiff in its business; and

that the defendant is using this personal, if not altogether confidential information acquired during his employment with the plaintiff for his own personal benefit. This defendant should not be shielded by a court of equity from the deliberate violation of his contractual obligation, when it is apparent that such conduct involves the appropriation and misuse of information entrusted to him in the course of employment to which the contract relates." 325 Ill. App. 229, 243, 59 N.E.2d 545, 550.

■■ Defendant cites numerous cases which hold that an employer, under ordinary circumstances, has no protectible business interest in maintaining its clientele. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 327 N.E.2d 356; *Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 329 N.E.2d 300; *United Travel Service, Inc. v. Weber* (1969), 108 Ill. App. 2d 353, 247 N.E.2d 801.) However, these authorities are distinguishable from the case before us because no confidential information relating to the requirements of the employers' customers had been acquired by the employees in those cases. Here, the hearing testimony indicates that Delaney had access to sensitive information while employed by McElroy. This included information about McElroy's equipment, recovery capabilities, yield figures, bidding procedures and suppliers' requirements. In addition, it was shown that Delaney had established customer contacts through close personal involvement with McElroy's suppliers. In combination, this insider information could potentially give defendants an unfair advantage in bidding against McElroy for photographic waste material. The intense competition in the industry would appear to justify, rather than discourage, the need for nonsolicitation and nondisclosure covenants. We conclude that the customer advantage gained by the potential use of confidential information is a legitimate business interest protectible by covenant and that the effect of such covenants is not the prevention of competition *per se*.

## II

Defendants also argue that the restrictive covenants are unreasonable in terms of area, time and scope. Whether the prohibitions of a restrictive covenant are unreasonably broad depends on the particular facts of each case. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Accordingly, those restrictive covenants which have been enforced in Illinois have varied extensively in both time and geographic area. *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.

■■ ■ With respect to geographic area, the courts particularly look to whether the restricted area is co-extensive with that in which the

covenantee is doing business. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) The evidence presented at the hearing indicates that McElroy does business throughout the country. Although the covenants contain no geographic limitation, the restrictions imposed by the covenants pertain only to the solicitation of certain customers and the disclosure of confidential information. In *Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603, we held that where an employer did business throughout the country, and the covenant was to protect the employer from losing customer contacts by reason of a former employee's knowledge and familiarity with the customers' requirements, the absence of a geographic limitation in a restriction limited to the nonsolicitation of those former contacts was not unreasonable. Our holding in *Wolf* is applicable to the instant case.

■■ With regard to the time limitation, courts have enforced restraints of longer duration so long as the geographic limitation is reasonable. (See, *e.g., Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 134 N.E.2d 329; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433; *Smithereen Co. v. Renfroe* (1945), 325 Ill. App. 229, 59 N.E.2d 545.) In this case the covenants impose a three year restriction, and we find that it is not unreasonably related to the period required to protect McElroy's interests.

■■ The instant covenants require Delaney to refrain from disclosing any of McElroy's confidential records or information or soliciting certain of McElroy's customers for a three-year period. The covenants allow Delaney to work in the silver recovery industry and permit him to solicit other suppliers on behalf of his new employer. In light of these circumstances, we cannot say that the trial court abused its discretion in finding, for the purpose of the preliminary injunction, that the covenants were reasonable in terms of time, area and scope.

## III

■■■ We must also reject defendants' contention that McElroy failed to establish a threat of irreparable injury. A showing of irreparable injury is related to the proof of a legitimate business interest. Once a protectible interest has been established, injury to plaintiff will presumably follow if that interest is not protected. This principle was recognized in *Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 327 N.E.2d 356, a case cited by defendant, although in that case no protectible interest was found to exist. Evidence that Delaney acquired confidential information which could be used to undermine McElroy's business and his own admission that he has called upon several customers with whom he had contact while employed by McElroy, is sufficient to establish a threat of irreparable harm for purposes of a preliminary injunction. It is unnecessary that McElroy show an actual monetary loss to obtain the protection

of temporary relief. See *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.

## IV

■■ Defendants' remaining objections relate to the terms of the order granting the preliminary injunction. Defendants argue that the trial court erred in attempting to reform the terms of the restrictive covenants. Although the trial court, in its discretion, may choose to follow the terms of the restrictive covenants sued upon in granting temporary relief (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6), it is not required to do so. The purpose of a preliminary injunction is to preserve the *status quo* until the case is disposed of on the merits. (*Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) Thus, we cannot say the trial court abused its discretion in enjoining only the disclosure of confidential information regarding McElroy's customers and the solicitation of customers under contract with McElroy or with whom Delaney had been involved in a completed purchase during his employment with McElroy.

We also find no merit in defendants' contention that the order appealed from is vague and indefinite. A plaintiff need not prove his entire case nor establish the extent of the relief to which he may be entitled after a final hearing, in order to obtain preliminary relief. We find the order sufficiently definite to apprise the parties of its scope and to safeguard the interests of both plaintiff and defendants pending the outcome of the litigation.

For the foregoing reasons, the order of preliminary injunction of the circuit court of Cook County is affirmed.

Affirmed.

*JIGANTI, P. J., and JOHNSON, J., concur.

---

° Dieringer, J., having retired, Jiganti, P. J., read the briefs and participated in the rendering of this opinion.