MORRISON METALWELD PROCESS CORPORATION, Plaintiff-Appellant, *v.* FRANK J. VALENT, Defendant-Appellee.

First District (5th Division)    No. 80-578

Opinion filed June 12, 1981.—Rehearing denied July 8, 1981.

Kenneth C. Miller, of Chicago, for appellant.

James E. Land, Ltd., of Calumet City, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Morrison Metalweld Process Corporation, appeals from the order denying its petition for a preliminary injunction to enforce a restrictive covenant in a licensing agreement. Morrison contends that the trial court erred in holding that, because there was no trade secret or secret processes involved, Illinois public policy bars enforcement of the restrictive covenant. Because we agree that the trial court misconstrued the applicable law, we reverse the order and remand the cause. The following facts were presented at the hearing on the petition for a preliminary injunction.

Morrison provides welding services to a group of large industrial concerns that use railroad tracks, crane rails and similar heavy equipment. It employs sales personnel to visit its customers and to ascertain what rail repair work they need. Based on the resulting reports plaintiff prices the particular job and sends the estimate or "bid" to the customer for approval. The customer then issues a purchase order to plaintiff, who forwards it to one of its licensee subcontractors. These licensees may accept or reject the work and are not held to any minimum or maximum output for Morrison. Moreover, while under contract, they remain free to accept other welding work. Morrison collects payment from its customers and then divides it, according to the contractual formula, with the licensee who performs the work.

On April 1, 1967, defendant, Frank Valent, signed a licensee agreement with plaintiff's predecessor.[1] The agreement contained the following clause:

> "Upon termination of this agreement for any cause whatsoever, licensee covenants and agrees, that, for a period of (2) years subsequent to the termination thereof that he will not directly or indirectly engage in, solicit or perform any contractor work of the kind contemplated by this Agreement or competitive with the business of Licensor, whether under the "Morrison Metalweld process" or otherwise, for any railroads or industries within the following area: The states of Pennsylvania, New York, Michigan, Illinois, New Jersey and Maryland."

Plaintiff trained defendant, who had several years of welding experience, in its business and provided him with an instruction manual.[2]

---

[1] Morrison Railway Supply Corporation sold its assets to its successor in interest, Morrison Metalweld Process Corporation. Defendant's licensee agreement was subsequently assigned to plaintiff on June 27, 1979.

[2] The manual details the Morrison Metalweld processes for repairing and reconstructing high manganese steel. These processes were patented initially, but at the time defendant began subcontracting work with plaintiff, the patents had expired.

During the period he accepted work from plaintiff, he serviced plaintiff's customers in New York, Connecticut, Delaware, Pennsylvania, and, since 1972, Illinois.

A few days after Morrison underwent a change in management (pursuant to the creation of the successor corporation) defendant terminated his relationship with plaintiff and began working, for his own account, at one of plaintiff's major, long-standing customers, U.S. Steel South Works. Subsequently, plaintiff brought this action to enjoin defendant from breaching his agreement not to compete. Gary Smith, plaintiff's president, testified that U.S. Steel South Works had been a continuous customer of plaintiff's for at least 30 years and accounted for 15-20% of its total billings. Smith also testified that Morrison had received no business from U.S. Steel South Works since July 1, 1979, about the time defendant began working there for his own account.

Following the hearing on plaintiff's petition for a preliminary injunction, the court stated that there was no question that defendant had breached his contract with plaintiff and that the covenant was valid and enforceable when entered. Nevertheless, the court declined to issue the preliminary injunction, holding that the covenant not to compete was unenforceable under current Illinois law.

OPINION

The central concern of this appeal is whether plaintiff has a business interest in its customers which justifies enforcement of the restrictive covenant. This business interest is germane to its plea for preliminary injunctive relief because one of the elements of an injunction is a clear right or interest needing protection. (*E.g., Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68; *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.) Morrison must also establish that it has no legal remedy, that it will suffer irreparable injury if the injunction does not issue, and that it will likely prevail on the merits. (*Image; S & F.*) All that is required of the petitioning party at the preliminary injunction stage is that he raise a fair question as to the existence of the right claimed and that he will probably be entitled to injunctive relief if he proves his allegations. (See *Frank B. Hall & Co. v. Payseur* (1979), 78 Ill. App. 3d 230, 396 N.E.2d 1246.) In the pending case, the propriety of injunctive relief depends upon the enforceability of the restrictive covenant.

Because agreements not to compete are, to at least some extent, restraints of trade, courts scrutinize such agreements carefully to ensure that they do not injure the public by impeding competition. (See *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) Courts also consider the promisor's right to pursue his livelihood without undue

constraints. (*Wessel.*) Where the limitation as to time and territory is not unreasonable, however, injunctive relief is customary and proper. (*Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433.) Therefore, when a party to an employment contract agrees, in exchange for certain benefits, to refrain from competing with his or her employer, that agreement should be enforced where equitable. (*Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.) The basic test for enforcing such a covenant is whether it is "reasonably necessary to protect the employer from improper or unfair competition." (*Iroquois Industries Corp. v. Popik* (1980), 91 Ill. App. 3d 505, 507, 415 N.E.2d 4, 6.) Implicit in this standard are two separate inquiries: (1) Does the employer have a legitimate business interest needing protection? (2) Is the restrictive covenant reasonable in scope?

■■ Not every alleged business interest will be deemed protectable through a covenant not to compete. (*Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 329 N.E.2d 300.) In *Nationwide* we recognized two general situations in which an employer's interest in its customers is "proprietary," that is, legally protectable. First, we noted that "[a] covenant not to compete will be enforced if the employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit." (*Nationwide*, 28 Ill. App. 3d 671, 673, 329 N.E.2d 300, 302.) Second, we stated that "[a]n employer's interest in its customers also is deemed proprietary if, *by the nature of the business, the customer relationship is near-permanent and but for his association with plaintiff, defendant would never have had contact with the clients in question.* [Citations.]" (Emphasis added.) 28 Ill. App. 3d 671, 673, 329 N.E.2d 300, 302.

In the pending case plaintiff concedes that there is no actual trade secret involved because the patents covering its special welding process had expired before defendant began working for plaintiff. Therefore, Morrison bases its claim to relief on its long-standing relationship with its customers, with whom defendant would not have come in contact except for his licensing arrangement with Morrison. As plaintiff correctly points out, the Illinois Supreme Court has recognized that protecting such a customer relationship is a legitimate interest of an employer. *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648 (veterinarian's interest in preventing his former employee from taking over his established clientele is subject to protection through a reasonable restrictive covenant); *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433 (defendant doctor's promise to temporarily refrain from practicing medicine within 25 miles of plaintiff's established offices was one of the considerations upon which plaintiff accepted defendant and guaranteed him a substantial income).

Many appellate decisions are in accord with this principle. In *Wessel Company, Inc. v. Busa* (1975), 28 Ill. App. 3d 686, 693, 329 N.E.2d 414, 419, we stated that "Illinois case law fully supports the proposition that an employer is entitled not to have his old customers enticed away from him." In *Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603, we upheld a restrictive covenant which sought to preserve an accounting firm's long-term client relationships from interference from a former employee. In *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6, we found an electrolysist's interest in her established clientele to be protectable through a covenant prohibiting a former employee from competing for two years within a 25-mile radius of plaintiff's business. In *Booth* we specifically rejected the defendant's argument, similar to the one made in the instant case, that because there was no trade secret or secret process involved in electrolysis, plaintiff's interest in its customers was not "proprietary." We distinguished defendant's authorities, which denied enforcement of restrictive covenants because of the lack of trade secrets, on the basis that none of those cases involved businesses whose customer relationships were long-term and whose employees would not normally have had access to those customers.

More recently, in *J. D. Marshall International, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4, we held that an export company's complaint, which set forth legitimate business interest of protecting the company's supplier and contractual relationships, stated a cause of action for enforcement of the post-employment restrictive covenants. *Cf. ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299 (even in the absence of an employment contract with restrictive covenants, an employee who breaches a fiduciary duty by competing with employer while still employed may be enjoined from tortiously appropriating employer's customers).

These cases, we believe, clearly support plaintiff's claim to a proprietary interest in its clientele. The trial court, however, found otherwise, stating that "the policy of the state for the last several years has nibbled away at these [restrictive covenants] to the point where their enforceability is questionable under almost any circumstances unless there is some trade secret [or property right] involved." The trial court cited *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68, as reflecting this supposed narrowing of Illinois policy toward restrictive covenants. It is true that the court in *Image Supplies* stated that "[a] restrictive covenant may be held enforceable *only* if the time limit and geographic scope are reasonable, *trade secrets or confidential information are involved,* and the restriction is reasonably necessary for the protection of a legitimate business interest. *Dunn v. Shepherd Insurance Agency,*

*Inc.* (1975), 25 Ill. App. 3d 825-26, 323 N.E.2d 853." (Emphasis added.) (*Image,* 71 Ill. App. 3d 710, 713, 390 N.E.2d 68, 70.)[3] This language implies—inadvertently, we believe—that a restrictive covenant will never be enforced absent a trade secret or confidential information. A close reading of the decision, however, reveals that *Image* did not involve any claim to an exclusive or near-permanent clientele. Rather, the plaintiff in *Image Supplies,* who sold printing supplies at retail to printers, sought to preserve as "confidential," the names and addresses of its customers, as well as certain pricing information. In concluding that the plaintiff had no protectable business interest in the mere identity of its customers the court noted that the information sought to be protected could be easily ascertained through the telephone book and various trade publications. Moreover, the printers who bought supplies from plaintiff also did business with plaintiff's competitors. In *Image,* therefore, the plaintiff's failure to establish a protectable interest in the names of its customers resulted in its failure to demonstrate that the restrictive covenant was reasonably necessary for the protection of its business. See also *Central Building & Cleaning Co. v. Vodnansky* (1980), 84 Ill. App. 3d 586, 406 N.E.2d 32.

We believe that *Image* is consistent with previous Illinois cases and does not signal a departure from the principles set out in *Nationwide* and the other cases were have discussed. Indeed, the *Image* court distinguished the facts before it from the supreme court decisions of *Canfield* and *Cockerill.* As we have noted, enforcement of restrictive covenants in those cases was partially premised on the employer's "near permanent" clientele and the employees' access to the customers through their employers.

■■ The pending case, we believe, fits well within the *Canfield* and *Cockerill* reasoning. Plaintiff has produced evidence of its continuous course of business with a relatively few, large industrial concerns that require plaintiff's special welding services. Although the Morrison Metalweld welding processes are no longer protected by patents, the record suggests that plaintiff's customers nevertheless rely on the licensee subcontractors to perform at least some of their rail repair work. Defendant admitted at the hearing that he had had no prior dealings with Morrison's customers before entering the licensee agreement. We believe that these

---

[3] Significantly, the authority for this statement, the *Dunn* case, was a memorandum opinion (as authorized by Ill. Rev. Stat. 1973, ch. 110A, par. 23, and since amended) which merely listed five factors to consider in determining the enforceability of restrictive covenants. One factor was that "° ° ° trade secrets or confidential information be in the possession of the promisor." (*Dunn,* 25 Ill. App. 3d 825, 826, 323 N.E.2d 853, 854.) Although the *Dunn* factors were apparently synthesized from a large group of authorities, no specific cases were cited. Moreover, the *Dunn* court summarily affirmed the enforcement of a five-year, seven-county restrictive covenant, finding it to be "reasonable." The was no issue raised concerning a long-term customer relationship. Hence, it is doubtful that the court intended to ignore or "overrule" the cases which recognize these customer relationships as being protectable.

facts tend to establish the existence of a legitimate business interest despite the absence of a "trade secret" or patent. We therefore conclude that, for purposes of preliminary injunctive relief, plaintiff has raised a "fair question" as to the existence of a right needing protection. See *Frank B. Hall v. Paseur.*

We must next determine whether the instant covenant is "reasonably related" to protecting that interest. (*Nationwide.*) In essence, this is a matter of time and territorial scope. The reasonableness of the restraint is measured by its injurious effect on the general public, if any, and the extent of the hardship it imposes on the restricted party. (See *Cockerill.*) In considering the reasonableness of the restrictive covenant we are not, of course, conclusively determining the merits of plaintiff's claim. We are only determining whether plaintiff has made a sufficient showing that the covenant is reasonable enough in scope to warrant preliminary injunctive relief.

Defendant does not contend that the two year time period, which plaintiff argues it needs to rebuild its "goodwill," is unreasonable. Instead he argues that the covenant is overly broad because it does not prescribe a reasonable geographic limit. Hence, defendant argues that he would be "absolutely prohibited" from pursuing the type of work he has done for "almost thirty-five years in six of the most industrialized states in the country."

On this question of geographical scope, the courts generally look to see whether the restricted area is coextensive with that in which the covenantee is doing business. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) Where the covenant specifies no geographical limits and the employer does business nationwide, courts have nevertheless upheld them as reasonable if their purpose is to protect an employer from losing clients to a former employee who gains special knowledge of the client's needs while employed. (*Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603. See also *Donald McElroy, Inc.*) In *J. D. Marshall International v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4, we held that "activity covenants," designed not to prohibit competition but to protect plaintiff's relationship with suppliers, do not require geographical limitations.

■■ Turning to the covenant in the pending case, we note that the actual language of the covenant appears to be rather broad in that it prohibits "contractor work of the kind contemplated by this Agreement or competitive with the business of Licensor, whether under the 'Morrison Metalweld process' or otherwise, for any railroads or industries within * * * Pennsylvania, New York, Michigan, Illinois, New Jersey and Maryland." However, the record and briefs indicate that the plaintiff only seeks to bar defendant from doing business with the specific customers with whom he came in contact through the licensee agreement with

plaintiff. We believe that this construction of the covenant is appropriate. If the covenant, as limited, is enforced, defendant would not be "absolutely" prohibited from practicing his trade in the States listed. He would only be restrained from capitalizing on the customer contacts he acquired through the licensee agreement.

Moreover, when he signed the agreement with plaintiff, he was an independent contractor who remained free to pursue other welding work. In return for the opportunity to increase his income by accepting jobs through plaintiff, defendant agreed to be bound by the restrictive covenant. Accordingly, we cannot state that the covenant as modified, is inequitable to defendant. Nor does it appear that the restrictions would harm the public or deprive it of competitive services.

■■ In summary, we find that (1) plaintiff has preliminarily established a legitimate interest, and (2) the restraints to be imposed on defendant are reasonably related to protecting that interest. With respect to the other elements of a preliminary injunction, it has been noted that the threat of irreparable injury is related to proof of a protectable interest and once such an interest is established, "injury to plaintiff will presumably follow if that interest is not protected." (*Donald McElroy*, 72 Ill. App. 3d 285, 294, 389 N.E.2d 1300, 1308.) Further, the likelihood that plaintiff will prevail on the merits is related to the reasonableness of the restrictive covenant. (*U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187.) As our analysis indicates, therefore, plaintiff has sustained its burden of establishing the requisites for preliminary injunctive relief.

Therefore, because the trial court erred as to the applicable law, we reverse the order and remand the cause with directions to enter a preliminary injunction against defendant.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.