**GRIFFITH LABORATORIES U.S.A., INC., a Delaware corporation, and Griffith Laboratories, Inc., an Illinois corporation, Plaintiffs,**

v.

**Richard POMPER, an individual, and Presco Food Products, Inc., a New York corporation, Defendants.**

**No. 83 Civ. 3934(MEL).**

United States District Court, S.D. New York.

Jan. 12, 1984.

Cleary, Gottlieb, Steen & Hamilton, New York City; Evan A. Davis and Douglas H. Meal, New York City, of counsel, Bell, Boyd & Lloyd, Chicago, Ill.; John P. Scotellaro and Charles G. Albert, Chicago, Ill., of counsel, for plaintiffs.

Hall, Dickler, Lawler, Kent & Howley, New York City, for defendants; Paul Sarno, New York City, of counsel.

LASKER, District Judge.

## FINDINGS OF FACT

This case concerns the enforcement of a non-solicitation clause in a salesman-employment contract between plaintiff Griffith Laboratories, Inc. ("Griffith") and defendant Richard Pomper. Griffith is a manufacturer of food ingredient formulae with sales of approximately $100 million in fiscal year 1982. It markets its products to food processing companies throughout the United States. From mid-1965 until 1983, Pomper was Griffith's salesman for the northeastern region of the country. In 1972 he entered into a salesman-employment contract with Griffith which prevented him from selling "any products competitive with those manufactured by [Griffith] to any customer to whom he sold [Griffith] products while an employee of [Griffith], for a period of two years after the termina-

tion of his employment."[1] In a letter to William Cox, a Griffith official, dated February 14, 1983, Pomper notified Griffith of his intention to resign effective February 26, 1983. At or about the same time, Pomper started work as the New England salesman for defendant Presco Food Products, Inc. ("Presco"), a Griffith competitor.

In July 1983, Griffith moved for a preliminary injunction to restrain Pomper from selling Presco products to 96 customers to whom Pomper had sold Griffith products when he was a Griffith salesman. The motion was denied on the grounds that Griffith had not shown that its food ingredient formulae were protectible "confidential" material; that a substantial question existed whether the nature of Griffith's relationship with its customers was "near-permanent;" that a question existed as to whether Pomper signed the non-solicitation agreement under duress; and that Griffith had not shown that the balance of hardship tipped decidedly in its favor.[2] The case proceeded to trial beginning in early October, 1983.

Griffith introduced evidence showing the near-permanency of many of its customers. Edward Davidheiser, Griffith's Director of Marketing Services, testified that Griffith has been in the food seasoning business for 65 years, and that it has developed a long-term business relationship with some of its customers spanning 30 to 40 years. In addition, plaintiff's exhibit 19 revealed that of the customers serviced by Pomper as a Griffith salesman in fiscal year 1982, 71% had purchased Griffith products for 6 consecutive years, and 62% had purchased from Griffith for 8 consecutive years.

While not of great significance in affecting the outcome of the case, Griffith introduced evidence showing the kind of support it provided to Pomper. William Cox, Griffith's Director for Eastern Regional Sales, testified that Griffith seeks to make its salesmen experts within the food processing industry. To this end, he stated that Griffith provides staff and service support to its salesmen, and that Pomper presumably received such support as a Griffith salesman. For instance, Griffith has set up regional and headquarters kitchens for the purpose of duplicating competitors' products and in order to improve upon existing food seasoning formulae. Cox also testified that Pomper was provided with an annual expense account of approximately $25,000 for customer development and that he attended sales meetings where he received updates on products and company developments. Cox further testified that it takes a salesman about two years to develop fully a customer account.

Griffith also introduced into evidence exhibits showing the breakdown in Pomper's sales as a Presco salesman between his former Griffith customers and his non-Griffith customers. Between March and August 1983, plaintiff's exhibit 11 shows that, as a Presco salesman, Pomper sold $77,000 worth of Presco products to former Griffith customers, while he made sales of only $19,000 to new customers during the same period.

Evidence was further presented by Griffith pertaining to the employment contract which Griffith seeks to enforce here. Albert Henderson, Griffith's Vice President for Personnel, testified that salesmen contracts were initiated in 1972 in order to limit the disclosure of confidential customer information. Henderson stated that while Pomper hesitated in signing the contract for several weeks, he never complained about the non-solicitation or the confidentiality provisions found in the employment contract, and that between 30 and 35 Griffith salesmen signed this kind of contract.

On the other hand, in order to show that the customer information relating to lists of customers and to food seasoning formulae was not confidential and hence not a protectible business interest, Pomper called Joel Krumel, Production Manager for Jor-

---

1. Plaintiff's Exhibit 1.

2. *See Griffith Labs. U.S.A., Inc. v. Pomper,* No. 83 Civ. 3934(MEL) (S.D.N.Y. filed July 26, 1983).

don's Meats, who testified that he often provided samples of his company's food seasonings to salesmen representing competing suppliers in order to give them the opportunity to duplicate an existing formula. In addition, Mr. Davidheiser's testimony supports a finding that the list of customers developed and solicited by Pomper was not confidential inasmuch as it could be obtained through the use of government, business, industry and telephone directories. Mr. Pomper also testified that before he joined Griffith as a salesman, he worked for other firms where he sold food seasonings or equipment to as many as 20 companies who later were Griffith customers.

## CONCLUSIONS OF LAW

At the outset, Illinois law governs the resolution of the issues presented here and both parties have couched their arguments in terms of the law of that state.

■ Under Illinois law, a restrictive covenant in an employment contract is enforceable where the employer demonstrates the existence of (1) a valid, binding contract; (2) a protectible business interest which justifies enforcement of the covenant; and (3) reasonable limitations on the scope of the covenant.[3] In this case, Pomper's salesman contract with Griffith was not a product of duress exerted on Pomper and was therefore valid and binding, Griffith's long-standing relationship with its customers in the northeastern United States establishes a protectible business interest, and the non-solicitation clause in issue was reasonable as to its geographical and temporal scope.

### 1. The Validity of the Salesman Contract Between Griffith and Pomper

Pomper asserts that he was forced to sign his employment contract with Griffith and that the threat of discharge rose to a level of economic duress which makes the

agreement void. In opposition, Albert Henderson, Griffith's Vice President for Personnel, testified that salesman contracts were first introduced in 1972 to protect the seasoning formulations of Griffith customers so that they could not be taken into the marketplace. As discussed above, he stated that Pomper never complained about the non-solicitation of confidentiality clauses found in the contract. Because we find his testimony credible, and in light of the general principles of contract law that govern this situation, it is determined that Pomper's salesman contract with Griffith was valid and binding.

■ Based on the record in this case, there is no evidence that Pomper was coerced into signing the contract, or that he objected to any of its terms. The fact that his agreement to the contract's terms may well have been a condition for his continued employment with Griffith does not, in itself, constitute duress or coercion. Mr. Pomper has instead mistaken consideration for coercion. As the District Court in *Medtronic, Inc. v. Benda* correctly pointed out, "[c]ourts have consistently enforced revised employment agreements which were conditioned upon continued employment.... When the terms of employment at will are revised, an employee must decide whether to accept the new terms or seek alternative employment. Continued employment under the old terms may simply not be one of the options available to the employee, and the fact that it is not one of the options available does not make the employee's decision the product of coercion."[4] Accordingly, even if Pomper was asked to sign his contract with Griffith on a "take it or leave it" basis, it was not signed under duress and therefore remains valid.

### 2. Griffith's Protectible Business Interest

■ Pomper argues that the restrictive covenant cannot be enforced against him

---

**3.** *See Medtronic, Inc. v. Benda,* No. 81 C 5029 (N.D.Ill. Feb. 4, 1982), *reprinted in,* 689 F.2d 645, 653 (7th Cir.1982); *Morrison Metalweld Process Corp. v. Valent,* 97 Ill.App.3d 373, 376, 52 Ill.Dec. 825, 827, 422 N.E.2d 1034, 1036 (Ill. App.Ct.1981).

**4.** *Medtronic, Inc. v. Benda, supra,* 689 F.2d at 655.

because Griffith does not have a legitimate business interest which needs protection. In support of this position and as discussed, he has presented evidence and arguments that many of the major customers with whom Pomper had a relationship while he was a Griffith salesman were transient in their dealings with Griffith. In addition, he has introduced evidence which purportedly shows that Griffith's customers' formulae can be duplicated by competitors and are therefore not confidential.

Griffith, on the other hand, has introduced evidence showing that the vast majority of customers who Pomper solicited while a Griffith salesman had long-standing accounts with the company, dating back at least eight years in many cases.[5] Additionally, they argue and have attempted to show that Griffith's customer formulae were confidential and that Pomper had access to at least some formulae.

Illinois courts will find a protectible business interest and enforce a restrictive covenant in an employment agreement where an employee has acquired confidential information through his employment and has attempted to use it for his own benefit, or if, by the nature of the business, the customer relationship is near-permanent and but for the employee's association with the employer, the employee would have not have had contact with the clients in question.[6]

In this case, we find that Mr. Pomper has not attempted to use confidential information which he may have had in his possession for the benefit of himself or Presco. The little evidence which Griffith presented as to this matter did not establish any misuse by Pomper. In addition, it is questionable whether under the Illinois cases Griffith's customer formulae information would be considered confidential in view of the fact that such formulae can be duplicated with some, but not considerable effort by competitors, and that it appears to be common practice in the food seasoning industry for competitors to duplicate each other's products.

However, although Griffith has not established that Pomper misused confidential information, it has proven that it has a legitimate business interest in its relations with its customers which is entitled to protection. The evidence establishes a generally long-term relationship between Griffith and many of its customers. Plaintiff's exhibit 19 shows, for instance, that of Pomper's Griffith customers for fiscal year 1982, only 4 out of 103 businesses had not bought Griffith products in prior years dating back to fiscal year 1973, the earliest year for which records are still available,[7] and that 71% of Pomper's Griffith customers bought Griffith products for six consecutive years. Moreover, Pomper's own witness, Herbert Langer, President of W.F. Schonland & Co., which was one of Pomper's larger Griffith accounts, testified that he was not interested in price as a basis for making his business decisions. In light of the absence of authoritative economic data in the record that customers in the food seasoning industry are especially price-sensitive and/or transitory in their dealings with suppliers, we conclude that Griffith has established that its customers are long-standing and near-permanent, as those terms are used by the Illinois Courts.

In order to find a protectible business interest, however, it is also necessary to find that but for Pomper's association with Griffith, Pomper would not have had contact with the customers in question. In an attempt to establish that his association with Griffith was not the major basis of his contact with their customers, Pomper made a strong showing that lists of potential or actual customers for food seasonings in the New England area can be developed through the use of business, industry and telephone directories and that before he

5.  *See* Plaintiff's Exhibit 19.

6.  *See Morrison Metalweld Process Corp. v. Valent,* 97 Ill.App.3d at 376–77, 52 Ill.Dec. at 828, 422 N.E.2d at 1037; *Nationwide Advertising*

*Services, Inc. v. Kolar,* 28 Ill.App.3d 671, 673, 329 N.E.2d 300, 302 (Ill.App.Ct.1975).

7.  *See* Plaintiff's Exhibit 19.

joined Griffith he had sold items other than food seasonings to some companies who later became Griffith customers.[8] While these facts are entitled to consideration, they are outweighed by Pomper's seventeen and one half year association with Griffith and its customers. Pomper's ability to develop customer contacts within the New England food seasoning market was enhanced significantly by the fact that he dealt with his customers as the salesman for Griffith Laboratories, the largest supplier of food seasonings in the United States. Moreover, his standing within the New England market clearly rose as his tenure as a Griffith salesman continued without interruption over such a long period of time. Griffith also provided Pomper with some support for his work in developing customer contacts by providing him with an expense account to entertain customers, a company automobile, a travel allowance, and laboratory support for the development of competitive seasonings. Accordingly, given Pomper's special status as a Griffith salesman for a substantial period of time, we hold that Pomper would not have developed most of these customer contacts at all, and some of the customer contacts to the extent that he did, but for his association with Griffith. It follows that, under Illinois law, Griffith has established that it has a business interest entitled to protection.

### 3. The Reasonableness of the Restrictive Covenant

■ Pomper argues that the restrictive covenant in issue, which prevents him from soliciting any of his former Griffith customers for two years, is unreasonable in its length of time and geographic scope. We disagree.

Illinois courts have found valid restrictive covenants of the same or even longer duration.[9] In addition, the geographical restraint found here, which effectively prevents Pomper from soliciting former New England customers in the New England area, is reasonable under the law of Illinois whose courts have held enforcible restraints involving greater or at least comparable areas.[10] Accordingly, the restrictive covenant found here is held to be reasonable in area, time, and scope.

Submit proposed decree on notice.

---

8. *See* Plaintiff's Exhibit 30.

9. *See Canfield v. Spear,* 44 Ill.2d 49, 254 N.E.2d 433 (Ill.Sup.Ct.1969) (3 years); *Tower Oil & Technology Co. v. Buckley,* 99 Ill.App.3d 637, 54 Ill.Dec. 843, 425 N.E.2d 1060 (Ill.App.Ct.1981) (3 years); *Morrison Metalweld Process Corp. v. Valent,* 97 Ill.App.3d 373, 52 Ill.Dec. 825, 422 N.E.2d 1034 (2 years).

10. *See Morrison Metalweld Process Corp. v. Valent,* 97 Ill.App.3d 373, 52 Ill.Dec. 825, 422 N.E.2d 1034 (6 state area). *See also Medtronic, Inc. v. Benda* 689 F.2d 645, 648 (7th Cir.1982) ("Where the covenant's restriction relates to the solicitation of customers, the absence of a geographical limitation is not unreasonable."); *Donald McElroy, Inc. v. Delaney,* 72 Ill.App.Ct. 285, 27 Ill.Dec. 892, 389 N.E.2d 1300 (Ill.App.Ct. 1979).